594 N.W.2d 317 (1999)
1999 ND 110
In the Matter of the Application for DISCIPLINARY ACTION AGAINST Lyle H. MOE, A Member of the Bar of the State of North Dakota.
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner
v.
Lyle H. Moe, Respondent
No. 980356.
Supreme Court of North Dakota.
June 18, 1999.
*318 Vivian E. Berg, Staff Counsel, and Paul Jacobson (argued), Assistant Disciplinary Counsel, Bismarck, for petitioner.
Patrick R. Morley, Morley Law Firm, Ltd., Grand Forks, for respondent.
PER CURIAM.
[¶ 1] The Disciplinary Board petitions for disciplinary action to be taken against Lyle H. Moe and recommends Moe be reprimanded for violating N.D.R. Prof. Conduct 1.5(a), suspended from the practice of law for 30 days for violating N.D.R. Prof. Conduct 1.15(b), and assessed all costs of the disciplinary proceedings. We have considered the Disciplinary Board's Report under N.D.R. Lawyer Discipl. 3.1(G) and order Moe to be suspended from the practice of law for 30 days for violating N.D.R. Prof. Conduct 1.5(a), suspended from the practice of law for 30 days for violating N.D.R. Prof. Conduct 1.15(b), and assessed all costs of the disciplinary proceedings in the amount of $3,396.65. We further order Moe's suspensions run concurrently.

I
[¶ 2] Lyle Moe was admitted to practice law in North Dakota on September 28, 1983. Between November 1994 and March 1996 Moe represented Dudley Benson on a number of claims relating to Benson's employment. Benson initially sought Moe's representation for a workers compensation claim in November 1994. Moe agreed to represent Benson and subsequently executed the North Dakota Workers Compensation Bureau's (the Bureau) standard notice of legal representation, which provided in part:
I agree that I will follow the guidelines of the Workers Compensation Bureau on payment of attorney fees and costs in my representation of the claimant.
I agree that I will submit vouchers to the Workers Compensation Bureau as the sole and exclusive remuneration for legal services and that no additional charge for such service will be made to the claimant. (Emphasis added.)
[¶ 3] In September 1995 Moe also agreed to represent Benson in a Social Security disability benefits appeal. The parties agreed Moe would receive a contingent fee of 25 percent of any recovery and submitted the required fee approval form to the Social Security Administration (SSA). The workers compensation matter remained pending during the time Moe was also working on Benson's Social Security disability appeal.
[¶ 4] In February 1996 the SSA awarded Benson $25,000 in Social Security disability benefits. Moe submitted the required fee petition and billing statement to the SSA, claiming a fee of $4,145.84 which reflected the amount of time Moe actually spent on the file.
[¶ 5] Just one week later, on March 18, 1996, Moe terminated his representation of Benson on the workers compensation matter. Moe wrote to Benson on that date:
[N]ote that the billing submitted to you is for information purposes only since that bill will be and has been submitted to Workers Compensation for payment. I am not billing you for that amount. That information is only provided to you for your files.

....

By this letter I am providing notice that I am withdrawing from the Workers Compensation claim and from representation in any other matters. ... I am providing notice to Workers Compensation on this date as well. (Emphasis in original.)
The workers compensation billing, which Moe claimed was being submitted to the Bureau, totaled $3,568.68.
[¶ 6] In April 1996 the SSA approved Moe's fee of $4,145.84 and sent a check in *319 that amount directly to Moe in mid-June 1996. Shortly thereafter, Benson appealed Moe's fee to the SSA, arguing some of the hours he was billed for involved Moe's work on other files; namely the workers compensation claim. On July 1, 1996, without notice to Moe, the SSA reduced Moe's fee to $2,500. As a result, Moe was in possession of $1,645.84 of Benson's disability award.
[¶ 7] In September 1996 Benson wrote to Moe requesting the difference of $1,645.84. Moe refused, telling Benson he was going to appeal the SSA's ruling. Moe later learned the SSA's fee review was non-appealable. Moe then chose to bill Benson for the hours he worked on the workers compensation file, notwithstanding his prior assurance in March 1996 the Bureau, not Benson, would be billed for the work on that file. In a letter dated November 8, 1996, Moe wrote:
In view of your determination to seek to reduce my Social Security billing to you, I have elected to bill you [in the amount of $3,568.68] for the time I spent on your Workers Compensation claim ... I have prepared a check in the amount of $1,645.84 for Social Security fee reimbursement. This check is available to you upon payment of my Workers Compensation billing unless you wish to offset the difference.
Benson was eventually forced to recover the difference of $1,645.84 in small claims court.
[¶ 8] On April 11, 1997, Disciplinary Counsel filed a Petition for Discipline against Lyle Moe, alleging Moe violated eight rules under the North Dakota Rules of Professional Conduct. The matter was heard by a Hearing Body of the Disciplinary Board on December 10, 1997. The Hearing Body filed its recommended findings and discipline on August 19, 1998; finding Moe clearly and convincingly violated N.D.R. Prof. Conduct 1.5(a) and 1.15(b), and recommending reprimand for the Rule 1.5(a) violation, 30 days suspension for the Rule 1.15(b) violation, and assessment of all costs of the proceedings.[1]
[¶ 9] The Disciplinary Board adopted the Hearing Body's findings and recommendations for discipline and submitted its Report to this Court on November 9, 1998. Moe timely filed objections to the Disciplinary Board's Report, and both parties presented briefs and oral argument. We now consider the Report of the Disciplinary Board under N.D.R. Lawyer Discipl. 3.1(G).

II

A. Workers Compensation Claim
[¶ 10] Rule 1.5(a), N.D.R. Prof. Conduct, requires a lawyer's fee to be "reasonable." The Hearing Body's report to the Disciplinary Board alleges Moe
charged Benson a fee for his representation concerning a claim for workers compensation when he had agreed with the Workers Compensation Bureau to be compensated only by the Bureau in accordance with its rules, and therefore that his charge to Benson constituted an unreasonable fee contrary to [N.D.R. Prof. Conduct 1.5(a) ].
[¶ 11] In his November 8, 1996, letter to Benson, Moe wrote: "I indicated that I would not seek payment for the Workers Compensation claim since you indicated that you did not have the money to pay me on that file. I indicated that I would settle on anything that I received through the Social Security claim. You agreed with that." This "arrangement" is apparently Moe's justification to bill Benson for the work done on the workers compensation claim.
*320 [¶ 12] The terms of the Bureau's notice of legal representation, however, are clear. Moe was to "submit vouchers to the Workers Compensation Bureau as the sole and exclusive remuneration for legal services." Moe understood this to be the arrangement as late as March 18, 1996, when he unilaterally terminated his representation of Benson and informed him the workers compensation billing "will be and has been submitted to Workers Compensation for payment ... I am not billing you for that amount."
[¶ 13] Moe may have viewed his dealings with Benson as the arrangement which he describes; however, the only valid and binding arrangement between the parties was the notice of legal representation executed and filed with the Bureau in November 1994. While Moe might have arranged to make a new agreement with Benson for compensation, he cannot do so unilaterally without Benson's consent and without notifying the Bureau to amend the notice of legal representation to conform with the requirements of N.D.C.C. § 65-02-08neither of which he did.
[¶ 14] Moe also argues he had legal justification to collect fees from Benson for the workers compensation claim under the theory of "quantum meruit." To prevail on a "quantum meruit" claim, the claimant must establish the recipient accepted benefits under circumstances which would reasonably notify the recipient that the claimant had an expectation of payment for the services rendered. Schmidt v. First Nat. Bank and Trust Co., 453 N.W.2d 602, 605 (N.D.1990) (citations omitted).
[¶ 15] Quantum meruit is an equitable principle which allows attorneys to collect the reasonable value of their services under a contingent fee contract when the attorney-client relationship is prematurely terminated. Charles W. Wolfram, Modern Legal Ethics, §§ 9.5.2, 9.6.1 (1st ed.1986). The notice of legal representation Moe executed and filed with the Bureau operates much like a contingent fee agreement because the attorney will be compensated only if the claimant "prevails" in accordance with the Bureau's guidelines. See N.D.C.C. § 65-02-08. This relationship differs, however, from a traditional contingent fee contract in that the attorney is compensated by the Bureau according to its fee schedules, not from the client's potential recovery. As such, Moe's claim for fees, if any, was with the Bureau, not Benson. Moe was therefore not entitled to collect fees directly from Benson for his work on the workers compensation matter at the time he unilaterally terminated his representation.
[¶ 16] We agree with the Disciplinary Board that Moe's billing to Benson contrary to the terms of the notice of legal representation constitutes an unreasonable fee under N.D.R. Prof. Conduct 1.5(a). We disagree, however, with the Disciplinary Board's recommendation that Moe only be reprimanded for his Rule 1.5(a) violation. The Disciplinary Board recommended a reprimand because it concluded Moe "negligently" and "thoughtlessly" violated the notice of legal representation executed with the Bureau. Under N.D. Stds. Imposing Lawyer Sanctions 7.3 "[r]eprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system."
[¶ 17] Under these circumstances, we cannot say Moe's conduct was merely "negligent" or "thoughtless." In November 1994 Moe executed a notice of legal representation which clearly provided his sole remuneration would come from the Bureau. At the time Moe terminated his representation in March 1996, he informed Benson the billing on the workers compensation matter was being sent to the Bureau. It was only after Moe discovered Benson had prevailed in his appeal of the award of attorney fees in the Social Security matter that Moe demanded payment *321 directly from Benson for the workers compensation billing.
[¶ 18] We find Moe "knowingly" violated N.D.R. Prof. Conduct 1.5(a) by charging his client an unreasonable fee. "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system." N.D. Stds. Imposing Lawyer Sanctions 7.2. We accordingly order Moe to be suspended from the practice of law for a period of 30 days.

B. Social Security Disability Claim
[¶ 19] The Hearing Body's report to the Disciplinary Board also alleges Moe
failed to promptly pay to Benson the amount he received in excess of the amount which he was authorized by the Social Security Administration to charge Benson for his representation of Benson for a claim for Social Security benefits, thereby violating the requirement of [N.D.R. Prof. Conduct 1.15(b) ] that a lawyer shall promptly deliver to a client any funds that the client is entitled to receive.
[¶ 20] Moe argues the Disciplinary Board failed to recognize he had a legal right to hold the excess money under N.D.R. Prof. Conduct 1.15(c), which provides:
When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
Moe argues he rightfully retained the excess funds until the dispute was ultimately resolved in small claims court. We disagree.
[¶ 21] Attorney fees charged for the representation of Social Security disability claimants are strictly regulated by the SSA. The SSA "decide[s] the amount of the fee, if any, a representative may charge or receive," 20 C.F.R. § 404.1720(b)(2), and a representative may not charge or receive any fee that is more than the amount approved by the SSA. 20 C.F.R. § 404.1720(b)(3). The federal regulations require the legal representative to present a written request for fees to the SSA detailing, among other things, the number of hours spent on the file. 20 C.F.R. § 404.1725(a). The regulations also provide that within 30 days of the fee determination either the claimant or attorney may request a review of the determination. 20 C.F.R. § 404.1720(c)(4). If either party chooses to seek a review, notice must be given to the other party. 20 C.F.R. § 404.1720(d). The SSA's review of the initial fee determination is not subject to further review. Id.
[¶ 22] Moe's written fee request for $4,145.84 was approved in April 1996. Although the record does not reflect the exact date, Benson subsequently sought review of Moe's fee. Benson did not, however, provide notice to Moe of his request for a fee review. Moe thus argues he had a legitimate dispute over the fee reduction because Benson failed to give him notice of the review and the regulations provided him no further avenue of appeal.
[¶ 23] It does appear Moe was denied a chance to respond to Benson's request for a fee review. We conclude, however, although Moe may have had a dispute over the reduction of his fee, the dispute was with the SSA. There is nothing in the record to evidence Moe ever raised an objection to the SSA regarding Benson's failure to give him notice. Once the appellate remedies of the SSA were exhausted, the decision of the SSA was final and there was no dispute entitling Moe to retain Benson's funds under N.D.R. Prof. Conduct 1.15(c).
[¶ 24] The federal regulations are clear. The SSA set Moe's fee at $2,500. Rule *322 1.15(b), N.D.R. Prof. Conduct, requires an attorney to promptly deliver any funds a client is entitled to receive. After being notified by the SSA of the fee reduction in July 1996, Moe retained the excess $1,645.84 until Benson eventually recovered the funds in November 1997 through small claims court. We agree with the Disciplinary Board that Moe violated N.D.R. Prof. Conduct 1.15(b) when he failed to promptly deliver the excess funds to Benson.
[¶ 25] Suspension is generally appropriate when a lawyer knows or should know he is dealing improperly with a client's property and thereby causes injury or potential injury to the client. N.D. Stds. Imposing Lawyer Sanctions 4.12. We, therefore, order Moe to be suspended from the practice of law for a period of 30 days for his violation of N.D.R. Prof. Conduct 1.15(b).
[¶ 26] We have considered Moe's other arguments and conclude they are without merit.

III
[¶ 27] We have considered the Disciplinary Board's Report under N.D.R. Lawyer Discipl. 3.1(G) and order Moe to be suspended from the practice of law for 30 days for violating N.D.R. Prof. Conduct 1.5(a), suspended from the practice of law for 30 days for violating N.D.R. Prof. Conduct 1.15(b), and assessed all costs of the disciplinary proceedings in the amount of $3,396.65. We further order Moe's suspensions run concurrently.
[¶ 28] VANDE WALLE, C.J., MARING, NEUMANN, SANDSTROM, and KAPSNER, JJ., concur.
NOTES
[1] The Petition for Discipline also initially alleged Moe violated N.D.R. Prof. Conduct 1.3, 1.4, and 1.5(b), because he failed to timely file a federal discrimination claim on Benson's behalf and the basis of the fee arrangement had not been communicated to Benson. In its report to the Disciplinary Board, however, the Hearing Body did not find any wrongdoing with respect to Moe's representation in the employment discrimination claim.