701 N.W.2d 873 (2005)
2005 ND 144
In the Matter of the Application for Disciplinary Action Against Michael WARD, a Member of the Bar of the State of North Dakota.
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,
v.
Michael Ward, Respondent.
No. 20050092.
Supreme Court of North Dakota.
July 25, 2005.
*874 Brent J. Edison, Assistant Disciplinary Counsel, Bismarck, N.D., for petitioner.
Michael L. Halpern of Halpern Law Office, PC, Glen Ullin, N.D., for respondent.
PER CURIAM.
[¶ 1] Disciplinary Counsel objects to the disciplinary board hearing panel's amended report, which concluded Michael Ward violated N.D.R. Prof. Conduct 1.15(f) and recommended he be reprimanded and pay costs of $3,076.52 associated with the proceeding. Ward objects to the hearing panel's conclusion that he violated N.D.R. Prof. Conduct 1.15(f). We conclude there is clear and convincing evidence Ward violated N.D.R. Prof. Conduct 1.15(f), and we adopt the hearing panel's recommendation of a reprimand and order Ward to pay restitution in the amount of $2,750 to James and Bonnie Mickelson and costs of $3,076.52 for the disciplinary proceeding.

I
[¶ 2] Ward was admitted to practice as an attorney and counselor at law in the courts of North Dakota on July 15, 1966, and his name has appeared since that date on the roll of attorneys admitted to the Bar of North Dakota as maintained by the Supreme Court of North Dakota.
[¶ 3] Ward began representing James and Bonnie Mickelson in 1998. He ended his representation in 2003 after learning the couple was planning to divorce. Shortly *875 after the representation began, James Mickelson was arrested on federal drug charges. Ward's representation included the sale of the Mickelsons' farm, defense of creditor claims, and filing a bankruptcy petition. During the representation, Ward established a bank account entitled "Mickelson Eaton Firm" and deposited in the account the proceeds from the sale of the Mickelsons' farm. "Eaton Firm" referred to Ward's law firm, and Ward initially placed his name on the account signature card. On April 29, 1999, at the Mickelsons' request, Ward removed his name from the account, replacing it with Jeffrey Miller and Bonnie Mickelson. Miller is an agricultural credit counselor the Mickelsons retained to assist them with handling their financial affairs before and separate from their retention of Ward. Although Ward's name was removed from the account signature card, the address and taxpayer identification number of Ward's law firm remained on the account. Ward did not provide Miller with any instructions concerning potential ethical obligations or duties arising from management of the account.
[¶ 4] Also on April 29, 1999, after control of the bank account was transferred, two payments were made to Ward: $9,628.92 for work completed before that date; and, $6,000 to be held in Ward's law firm's trust account for work to be completed after that date. Bonnie Mickelson, who also held a power of attorney for James, approved payment of the billing and the advance.
[¶ 5] As a basis for their recommendation of reprimand, the hearing panel concluded Ward violated N.D.R. Prof. Conduct 1.15(f), safekeeping property, because he failed to maintain duplicate or backup records to account for portions of the $6,000 in advanced fees placed in his law firm's trust account, and failed, by Ward's own admission, to fully account for $2,750 of the $6,000. The hearing panel recommended Ward refund the Mickelsons $2,750 in fees and pay costs of the disciplinary proceedings of $3,076.52, representing the costs and expenses associated with his violation of N.D.R. Prof. Conduct 1.15(f). Both Ward and Disciplinary Counsel filed objections to the hearing panel's amended report and recommendations.

II
[¶ 6] We review disciplinary proceedings de novo on the record. In re Disciplinary Action Against Edin, 2005 ND 109, ¶ 9, 697 N.W.2d 727. We accord due weight to the findings, conclusions, and recommendations of the hearing panel, but we do not act as a mere rubber stamp. Id. Disciplinary Counsel bears the burden of proving each alleged violation of the disciplinary rules by clear and convincing evidence. Id. Each disciplinary case must be considered on its own facts to decide what discipline is warranted. Id.

III
[¶ 7] Disciplinary Counsel argues the hearing panel erred when it concluded Ward did not violate N.D.R. Prof. Conduct 1.15(a) and 1.15(b) because his fiduciary obligation for the safekeeping of client funds did not end when he removed his name from the "Mickelson Eaton Firm" account, and when it recommended Ward pay only the attorney's fees and costs associated with his violation of N.D.R. Prof. Conduct 1.15(f). Ward argues the hearing panel erred when it concluded he violated N.D.R. Prof. Conduct 1.15(f) by failing to keep sufficient records of the Mickelsons' advance payment. Disciplinary Counsel and Ward both argue the hearing panel erred when it recommended a reprimand under N.D. Stds. Imposing Lawyer Sanctions *876 4.13 for Ward's violation of N.D.R. Prof. Conduct 1.15(f), and when it recommended Ward pay $3,076.52 in costs and attorney's fees. Disciplinary Counsel contends Ward should be suspended under N.D. Stds. Imposing Lawyer Sanctions 4.12, and ordered to pay $15,382.61 in costs and attorney's fees. Ward contends the appropriate punishment is admonishment under N.D. Stds. Imposing Lawyer Sanctions 4.14, and he should not be assessed any costs and attorney's fees. Ward further argues the hearing panel erred when it recommended he pay $2,750 in restitution to the Mickelsons.

A
[¶ 8] Disciplinary Counsel argues the hearing panel erred when it determined Ward did not violate N.D.R. Prof. Conduct 1.15(a) and 1.15(b) because his fiduciary obligation for the safekeeping of client funds did not end when he removed his name from the signature card on the "Mickelson Eaton Firm" account and replaced it with Bonnie Mickelson and James Miller. Disciplinary Counsel contends Ward should have provided Miller ongoing guidance regarding the legal requirements for safekeeping the funds in the account by establishing guidelines as to what bills could be paid and what documentation is required. We disagree.
[¶ 9] Rule 1.15, N.D.R. Prof. Conduct, provides:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be deposited in one or more identifiable interest bearing trust accounts in accordance with the provisions of paragraph (d). Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer in the manner prescribed in paragraph (f).
(b) Upon receiving, in connection with a representation, funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
[¶ 10] Rule 1.15(a) requires lawyers to act as fiduciaries for money or property that comes into their "possession in connection with a representation." Rule 1.15(b) extends the lawyer's fiduciary obligation to situations when the lawyer receives "funds or other property in which a client or third person has an interest." The Comment to Rule 1.15 provides:
Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party.
[¶ 11] At the hearing, Bonnie Mickelson testified that Ward placed his firm name on the account to shield the proceeds from the sale of the Mickelsons' farm from creditors. She later testified, however, that "after the land sale was done and after [Ward] paid the people that had to be paid," he removed his name from the account. Disciplinary Counsel offered no *877 other testimony regarding what creditors, if any, had "just claims" against the funds in the Mickelsons' bank account. Ward asserts his duties and obligations with regard to the Mickelsons' bank account terminated when he transferred control to Bonnie Mickelson and Jeffrey Miller. Ward argues that because James Mickelson specifically requested the account be transferred to his wife, Bonnie Mickelson, who held his Power of Attorney, and to their credit advisor Jeffrey Miller, he was obligated to do so under N.D.R. Prof. Conduct 1.15(b), and would have been subject to sanction for not complying. Ward testified that he knew there were creditor claims against the Mickelsons, but not against the sale proceeds specifically.
[¶ 12] We conclude Disciplinary Counsel has not shown by clear and convincing evidence that Ward had a continuing fiduciary obligation regarding the handling of the "Mickelson Eaton Firm" account once he relinquished control in accordance with his clients' wishes. However, rather than allowing his law firm's address and tax identification number to remain on the account, it would have been better practice for Ward to completely terminate his association with the account by closing it and transferring the funds to his clients.

B
[¶ 13] The hearing panel concluded Ward violated N.D.R. Prof. Conduct 1.15(f) because he "failed to maintain duplicate records or electronic backup to account for portions of the $6,000 placed in Ward's law firm's trust account as an advance on future fees," and Ward "failed, by his own admission, to account for $2,750 of the $6,000 advance on future fees." Ward argues he did not mishandle the $6,000 advance payment he received from the Mickelsons. Rather, Ward contends he provided billing records for most of the $6,000 and the billing records for the $2,750 he cannot account for are missing because the new agent holding a power of attorney, James Mickelson's sister, Connie Mickelson, took the original record out of the client file and a computer virus destroyed his backup record. We disagree.
[¶ 14] Ward's failure to maintain duplicate billing records and to account for $2,750 in fees is a violation of N.D.R. Prof. Conduct 1.15(f). Under Rule 1.15(f), "[a] lawyer shall maintain or cause to be maintained on a current basis records sufficient to demonstrate compliance with the provisions of this rule. Such records shall be preserved for at least six years after termination of the representation." Ward was paid the $6,000 advance in April 1999. He continued to represent the Mickelsons until 2003, when he learned the couple planned to divorce. Rule 1.15(f), N.D.R. Prof. Conduct, requires that an attorney maintain records related to the handling of client's property for six years. When asked to produce the records in 2004, Ward could not do so. At the hearing, when asked if there was "about $2,750 . . . spent for legal fees . . . [he] cannot account for," Ward responded, "I think that's probably closer to the facts. Unfortunately, it's embarrassing to have any amount that I can't account for. It really should be accountable." When asked if Connie Mickelson took billing records from the Mickelson file, Ward responded, "I don't know to be sure, but I know she'd gotten through the file, and Iand itit should have been in that file." There is no evidence to support Ward's contention that the billing records were removed from his client file by Connie Mickelson. Although it is unfortunate that a computer virus destroyed Ward's backup billing record files, it does not relieve him of his duty to maintain records. We conclude, therefore, that there is clear and convincing evidence that Ward failed to maintain sufficient records *878 in violation of N.D.R. Prof. Conduct 1.15(f).

IV
[¶ 15] Disciplinary Counsel and Ward both argue the sanctions the hearing panel recommended are not appropriate. The hearing panel recommended that Ward be reprimanded under N.D. Stds. Imposing Lawyer Sanctions 4.13 for violating N.D.R. Prof. Conduct 1.15(f), that Ward pay $2,750 in restitution to James and Connie Mickelson, and that Ward pay costs and attorney's fees of $3,076.52. Disciplinary Counsel argues Ward should be suspended under N.D. Stds. Imposing Lawyer Sanctions 4.12 and should pay costs and attorney's fees of $15,382.61 for the disciplinary proceeding. Ward argues that at most, he should be admonished under N.D. Stds. Imposing Lawyer Sanctions 4.14, he should not be assessed any costs or attorney's fees for the disciplinary proceeding, and he should not be ordered to pay restitution to the Mickelsons.

A
[¶ 16] In determining the appropriate sanctions for violations of the Rules of Professional Conduct, this Court is guided by the North Dakota Standards for Imposing Lawyer Sanctions. Edin, 2005 ND 109, ¶ 11, 697 N.W.2d 727. Under N.D. Stds. Imposing Lawyer Sanctions 2.0, potential sanctions include admonishment, reprimand, suspension, restitution, and assessment of costs. In imposing a sanction after a finding of lawyer misconduct, we consider the following factors: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." N.D. Stds. Imposing Lawyer Sanctions 3.0.
[¶ 17] In considering the factors from the Standards for Imposing Lawyer Sanctions, we conclude Ward should be reprimanded. Under N.D. Stds. Imposing Lawyer Sanctions 4.13, "[r]eprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." Ward violated N.D.R. Prof. Conduct 1.15(f) by his failure to maintain sufficient records to account for fees advanced by his clients. We conclude Ward was negligent in his handling of the $6,000 in advanced fees, causing injury or potential injury to the Mickelsons. "`Negligence' is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." N.D. Stds. Imposing Lawyer Sanctions, Definitions. "`Injury' is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." N.D. Stds. Imposing Lawyer Sanctions, Definitions. "`Potential injury' is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." N.D. Stds. Imposing Lawyer Sanctions, Definitions.
[¶ 18] Ward negligently failed to maintain duplicates or electronic backup of the Mickelsons' billing records, and he was unable to account for $2,750 of the $6,000 of advanced fees he received. This was money belonging to his clients that he could not prove he had earned as fees. Without the records, Ward cannot prove he did not charge the Mickelsons for work he did not perform. As a result of Ward's negligence, the Mickelsons may have paid for legal services they did not receive causing harm to the Mickelsons and the legal *879 profession. We, therefore, conclude a reprimand is the appropriate sanction for Ward's violation of N.D.R. Prof. Conduct 1.15(f).

B
[¶ 19] Disciplinary Counsel argues the hearing panel erred when it reduced the costs and attorney's fees they requested Ward pay from $15,382.61 to $3,076.52. Disciplinary Counsel contends the hearing panel erred when it recommended that Ward pay costs and attorney's fees of $3,076.52 because the recommendation was based on two erroneous conclusions: first, that Ward's obligations concerning the Mickelson bank account ended when he removed his name as signatory; and second, that Ward's inability to account for portions of the $6,000 in advanced fees paid by the Mickelsons did not rise above the level of negligence. Ward contends he should not be assessed any costs and attorney's fees because his only violation was caused by circumstances beyond his control. We disagree with both arguments.
[¶ 20] The assessment of costs is a sanction to be imposed when a lawyer has engaged in professional misconduct. Standard 2.7(b), N.D. Stds. Imposing Lawyer Sanctions. Rule 1.3(D), N.D.R. Lawyer Discipl., provides:

Costs. Unless otherwise ordered by the court or hearing panel, costs and expenses of all disability or discipline proceedings, including, without limitation, the costs of investigations, service of process, witness fees, and a court reporter's services, must be assessed against the lawyer in any case where discipline is imposed or there is a transfer to disability inactive status or incapacitated status. In assessing costs and expenses, the court or hearing panel may consider as a mitigating factor the lawyer's tender of a conditional admission under Rule 4.2 that is consistent with or less than the discipline imposed. All expenses so assessed must be paid to the secretary of the board.
[¶ 21] This Court, in In re Disciplinary Action Against Boughey, 1999 ND 205, ¶¶ 13-14, 602 N.W.2d 268 (citations omitted), outlined our policy on assessment of costs and expenses:
Unless otherwise ordered by this Court or the Disciplinary Board, our disciplinary rules require assessment of costs and expenses against a disciplined attorney. Costs and expenses assessed under N.D.R. Lawyer Discipl. 1.3(D) ordinarily include reasonable attorney fees for disciplinary counsel. Costs and expenses of disciplinary proceedings also may be assessed as a sanction. N.D.R. Lawyer Discipl. 1.3(A)(9).
In [Disciplinary Bd. v.] Larson, 512 N.W.2d [454], 457-58 [(N.D.1994)], the Disciplinary Board recommended a disciplined attorney pay attorney fees incurred by disciplinary counsel in the amount stated in disciplinary counsel's affidavit. The disciplined attorney challenged the reasonableness of disciplinary counsel's fees, and we said the disciplined attorney should have a fair opportunity to challenge the reasonableness of those fees. Id. at 458. We ordered the disciplined attorney to pay reasonable attorney fees in an amount determined by the Disciplinary Board after affording the disciplined attorney a fair opportunity to challenge the reasonableness of the attorney fees claimed by disciplinary counsel. Id.

[¶ 22] Based on Disciplinary Action Against Boughey and N.D.R. Lawyer Discipl. 1.3(D), it is clear that costs and expenses must be assessed against a disciplined attorney unless otherwise ordered by the Court or Disciplinary Board. The question is one of reasonableness of the attorney's fees. Disciplinary Counsel requested *880 Ward be assessed fees and costs of $15,382.61, yet of the five alleged violations, only a violation of Rule 1.15(f), N.D.R. Prof. Conduct, was established by clear and convincing evidence. Consequently, the hearing panel reduced Disciplinary Counsel's requested costs and attorney's fees by approximately 80 percent. We find the hearing panel's assessment of $3,076.52 in costs and attorney's fees reasonable under these particular facts and, therefore, adopt the hearing panel's recommendation. Ward is ordered to pay costs and attorney's fees of $3,076.52 associated with this disciplinary action.

C
[¶ 23] Ward argues the hearing panel erred when it recommended that he pay $2,750 in restitution to the Mickelsons. We conclude that because of Ward's violation of Rule 1.15(f) and his inability to establish that he earned fees in the amount of $2,750, he must return that amount of the fund to James and Bonnie Mickelson under Standard 2.7(b), N.D. Stds. Imposing Lawyer Sanctions and Rule 1.3(D), N.D.R. Lawyer Discipline.

IV
[¶ 24] We conclude Ward violated N.D.R. Prof. Conduct 1.15(f). We order that he be reprimanded, pay restitution to James and Bonnie Mickelson of $2,750, and pay costs and attorney's fees of $3,076.52 for the disciplinary proceeding.
[¶ 25] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.
[¶ 26] The Honorable DANIEL J. CROTHERS did not participate in this decision.