# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 213

In the Matter of the Application for
Disciplinary Action Against Robert V.
Bolinske, a Person Admitted to the Bar
of the State of North Dakota

----------

Disciplinary Board of the Supreme Court
of the State of North Dakota,                                         Petitioner

    v.

Robert V. Bolinske, Sr.,                                              Respondent

Nos. 20190109 & 20190110

Application for disciplinary action.

REPRIMAND ORDERED AND REMANDED.

Per Curiam.

Kara J. Erickson, Bismarck, ND, for petitioner.

Robert V. Bolinske, Sr., self-represented, Bismarck, ND.

**Per Curiam.**

[¶1]    Robert Bolinske, Sr., objects to Disciplinary Board Hearing Panel's findings of fact, conclusions of law, and recommendation that he be suspended from the practice of law for 30 days and pay $5,000 restitution to both Mark Carter and Gary and Teresa Watson.  Bolinske argues the hearing panel erred by finding he violated N.D.R. Prof. Conduct 1.5(a), 1.15(e), and 1.16(e) and recommending he be suspended.  We conclude clear and convincing evidence does not support finding Bolinske violated N.D.R. Prof. Conduct 1.5(a) and 1.15(e).  We conclude clear and convincing evidence established Bolinske violated N.D.R. Prof. Conduct 1.16(e) by failing to return case files to Carter and the Watsons after representation was terminated.  We order Bolinske be reprimanded and pay partial costs and expenses of the disciplinary proceeding in the amount of $3,300.  We remand File no. 20190110 to the hearing panel for determination whether Bolinske violated Rule 1.16(e) by failing to refund to the Watsons any unearned portion of the $10,000 fee they paid Bolinske.


I

[¶2]    Bolinske was admitted to practice law in North Dakota in 1975, but he is not currently licensed in this state.

[¶3]    In June 2018, disciplinary counsel petitioned to discipline Bolinske, alleging he violated N.D.R. Prof. Conduct 1.5(a) (reasonable fees), 1.15(e) (safekeeping of property), and 1.16(e) (terminating representation) in connection with his representation of Carter and the Watsons.  Disciplinary counsel alleged Bolinske agreed to and collected unreasonable fees from Carter and the Watsons, he failed to properly maintain possession of property in which two or more persons claimed an interest until the dispute was resolved, he failed to return Carter's and the Watsons'

1

files after they terminated his representation, and he failed to refund unearned fees. Bolinske denied the alleged misconduct and requested the charges be dismissed.

[¶4]    After receiving testimony from Bolinske and admitting exhibits from both parties, the hearing panel found clear and convincing evidence Bolinske violated all three rules. The hearing panel recommended Bolinske be suspended from the practice of law for 30 days, refund unearned fees to Carter and the Watsons in the amount of $5,000 each, and pay the costs and expenses of the disciplinary proceedings.

## II

[¶5]    Bolinske argues the hearing panel erred by finding there was clear and convincing evidence he violated N.D.R. Prof. Conduct 1.5(a), 1.15(e), and 1.16(e).

[¶6]    We have summarized our standard in disciplinary proceedings:

> "This Court reviews disciplinary proceedings de novo on the record. Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction. The evidence need not be undisputed to be clear and convincing. We give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, but we do not act as a mere rubber stamp for the Board. To decide which sanction, if any, is appropriate, each disciplinary matter must be considered on its own facts.
> "Because the hearing panel has the opportunity to hear witnesses and observe their demeanor, we accord special deference to the panel's findings on matters of conflicting evidence. Similarly, we defer to the hearing panel's findings on the credibility of a witness, because the hearing panel has the opportunity to observe the witness's demeanor and hear the witness testify."

*In re Disciplinary Action Against Ward*, 2016 ND 113, ¶ 7, 881 N.W.2d 206 (quoting *Disciplinary Bd. v. Carpenter*, 2015 ND 111, ¶ 9, 863 N.W.2d 223) (internal citations and quotation marks omitted).

## A

[¶7]    Disciplinary counsel alleged Bolinske violated "Rule 1.5(a), N.D.R. Prof. Conduct, by making an agreement for, charging, or collecting an unreasonable fee due

2

to failure to follow Rule 1.5(c), regarding contingent fees, by including a provision for fixed $10,000 fee within the fee agreement." Rule 1.5(a), N.D.R. Prof. Conduct, prohibits unreasonable fees, and states:

> "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent."

[¶8] Although executed at different times, Bolinske's fee agreements with Carter and the Watsons are identical. The agreements state:

> "Contingent Fees for Services. I agree to pay my attorney for his services 33 1/3% of whatever amount is actually recovered as a result of trial or settlement. If no recovery is made, I will owe my attorney nothing for his labor and time spent. In addition, there shall be paid a non-refundable $10,000.00 retainer payment which amount shall thereafter be deducted from any contingent fee actually recovered.
> . . . .
> "Payment for Expenses and Court Costs. Whether or not a recovery is made, all court costs and money paid out by my attorney for investigation or litigation expenses are to be paid by me. With the signing of this Agreement, I have paid to my attorney an initial sum of $ -0- to apply on costs and expenses. If my attorney advances additional money on my behalf for costs or expenses, I will repay him."

[¶9] The hearing panel found clear and convincing evidence established Bolinske's violation of N.D.R. Prof. Conduct 1.5(a). The hearing panel found Carter and the Watsons signed their fee agreements, the clients each paid Bolinske $10,000, and Bolinske deposited the funds into his personal bank account which he also used as an

operating account for his law practice.  Based on Bolinske's testimony and discovery responses, the hearing panel found Bolinske appeared to be unaware of what type of retainer he was charging, but he claimed the payments were to ensure Carter and the Watsons "had some skin in the game," and the fees were paid for Bolinske to investigate, prepare, and bring claims against Tesoro.  The hearing panel found:

> "[T]he internal inconsistency of Bolinske's fee agreements rendered the agreements unreasonable.  The fee agreements stated Bolinske would be owed nothing if no recovery was made or if Bolinske withdrew from representation; however, the $10,000.00 retainer was nonrefundable.  But the agreement also stated the $10,000.00 retainer would be refunded, despite being labeled nonrefundable, to the client in the event of a recovery.  The fee agreement did not contain language regarding what would occur if there was an early termination by the client.
>
> "Clear and convincing evidence exists that the agreements entered by Bolinske with Carter and the Watsons are unreasonable.  The internal inconsistencies in the fee agreements, failure to set forth payment of expenses and failure to establish what would occur if there was an early termination of the agreement by the client violate Rule 1.5(a), N.D.R.Prof. Conduct.  N.D.R.Prof. Conduct 1.5(a).
>
> "The factors specified in subsections 1 through 8 of Rule 1.5(a), N.D.R.Prof. Conduct are not exclusive in determining unreasonableness.  *See* Comments, Rule 1.5, N.D.R.Prof. Conduct."

[¶10] Disciplinary counsel argues this Court should adopt the hearing panel's recommendation and find Bolinske violated N.D.R. Prof. Conduct 1.5(a). Disciplinary counsel contends the agreements were unreasonable due to the inconsistent language used in the agreements, including that the agreements created a contingent fee and stated the client will owe nothing if there is no recovery but also required the client to pay a non-refundable $10,000 retainer payment.

[¶11] "Our Rules of Professional Conduct require an attorney's fee to be reasonable and require the basis, rate, or fee amount to be adequately communicated to the client within a reasonable time after commencing representation." *In re Disciplinary Action Against Hoffman*, 2013 ND 137, ¶ 11, 834 N.W.2d 636.  A contingent fee is not per se unreasonable.  *See In re Disciplinary Action Against Lee*, 2013 ND 151, ¶ 12, 835 N.W.2d 836; *In re Disciplinary Action Against Dooley*, 1999 ND 184, ¶¶ 19-20, 599 N.W.2d 619.  Non-refundable fee agreements are not per se unreasonable under

4

N.D.R. Prof. Conduct 1.5. *Hoffman*, at ¶¶ 15, 27. Disciplinary counsel has not cited and we do not find any case in which this Court has held a fee agreement was unreasonable because it included both a contingent fee and a retainer.

[¶12] Comment 4 to N.D.R. Prof. Conduct 1.5 states, "A lawyer may require advance payment of a fee, but is obliged to return any unearned portion. See Rule 1.16(e)." An attorney is required to refund any unearned portions of a retainer, even if the fee agreement states the retainer is non-refundable and the fee was not held in trust for the client. *See Hoffman*, 2013 ND 137, ¶¶ 24-25, 834 N.W.2d 636. *See also In re Disciplinary Action Against Hann*, 2012 ND 160, ¶ 25, 819 N.W.2d 498. "[T]he client may be entitled to a return of some portion of the 'non-refundable' fee retainer upon the termination of the representation, depending upon all the circumstances; that is, the 'reasonableness' of the fee." *Hoffman*, at ¶ 25 (quoting *Kentucky Bar Ass'n v. Earhart*, 360 S.W.3d 241, 244 (Ky. 2012)).

[¶13] In *Hoffman*, 2013 ND 137, ¶¶ 1-2, 834 N.W.2d 636, this Court considered whether a fee agreement violated N.D.R. Prof. Conduct 1.5(a) when the agreement required the client to pay a "minimum fee" of $30,000, and stated "[t]here is no refund of the minimum fee." The funds from the "minimum fee" were placed in the attorney's operating account upon payment from the client. *Hoffman*, at ¶ 2. Under the terms of the contract the attorney and client agreed the minimum fee was paid to retain the attorney's services, the minimum fee was non-refundable, and the fee immediately became the attorney's property on payment and would not be held in a trust account. *Id.* at ¶ 17. We applied the factors under N.D.R. Prof. Conduct 1.5(a) and concluded the minimum fee was reasonable when paid under the facts and circumstances of that case, and did not violate the rule. *Hoffman*, at ¶ 19. We also considered whether the attorney was required to refund any portion of the minimum fee upon termination of the lawyer's services prior to completion of the representation. *Id.* at ¶ 20. We said:

> "[E]ven under these circumstances when the attorney and client have
> plainly agreed that a 'minimum fee' is nonrefundable and has become

5

the lawyer's property, we believe that N.D.R. Prof. Conduct 1.16(e) still requires a lawyer to refund upon termination any portion of the fees collected that a lawyer has not yet 'earned' under the agreement, so that the total fee collected is not 'unreasonable' under N.D.R. Prof. Conduct 1.5 for the legal services actually performed on the client's behalf."

*Hoffman*, at ¶ 26.

[¶14]   Here, the plain language of the agreements states Bolinske would be paid for his services 33 1/3 percent of the amount actually recovered as a result of a trial or settlement, each client would pay Bolinske $10,000 as a non-refundable fee, and the $10,000 non-refundable fee would be deducted from any contingent fee amount actually recovered.   Although the fee agreements state the retainer was non-refundable, Bolinske was required to refund any unearned portion of the fee under N.D.R. Prof. Conduct 1.16(e).  *Hoffman*, 2013 ND 137, ¶ 26, 834 N.W.2d 636.  The fee agreements explain that there is a $10,000 retainer, that the retainer will be deducted from any contingent fee actually recovered, and that the client will owe nothing for the attorney's labor and time if no recovery is made.  Although not a model of clarity, the agreements adequately explain the basis for the fees and the fee amount.

[¶15]   The record shows Carter and Gary Watson had potential claims against Tesoro arising from their employment with the company, and Bolinske was representing them in claims against Tesoro or its agents.  Bolinske claims the case started out as a minor employment case but turned into a much larger case about a large oil spill caused by Tesoro's "negligence, the use of defective pipe, shoddy construction and the use of unqualified personnel."

[¶16]   Bolinske began representing Carter in April 2016 and the Watsons in August 2016.  Bolinske claims he worked on the case almost exclusively for one and a half years and he would have incurred "between $400,000 to $600,000 in attorney fees had he been charging on a per-hour basis at his usual rate of $250 per hour." Evidence established Bolinske went into mediation with Tesoro in July 2016 to attempt to settle Carter's case, and Bolinske testified his work preparing for and

6

dealing with the mediation was worth more than $10,000. Bolinske was the only witness and no evidence conflicts with his testimony about the complexity of the case or the amount of work he completed. Disciplinary counsel admits 33 1/3 percent is a standard contingent fee in North Dakota. Disciplinary counsel does not argue the amounts of the fees agreed to by Carter and the Watsons were unreasonable. Evidence established the combined fee was to investigate, prepare, and bring claims against Tesoro. The $10,000 non-refundable fee and the contingent fee combination is not unreasonable due to its structure. Nor is the fee agreement unreasonable due to the amount of work required in this type of case, and the uncertainty of recovery for that work. Under the terms of the fee agreements, the non-refundable fee would be deducted from any contingent fee actually recovered.

[¶17] In *Lee*, 2013 ND 151, ¶ 15, 835 N.W.2d 836, this Court explained the purpose of N.D.R. Prof. Conduct 1.5(a), stating:

> "The purpose of the prohibition in Rule 1.5(a) against charging an unreasonable fee is to protect clients and the public from excessive fees which exceed the bounds of reasonableness in light of the amount and quality of the work performed, the results obtained, and the fees customarily charged in the locality for similar legal services. The rule was not intended to be used to resolve routine contractual fee disputes between an attorney and client. When there is a legitimate, good faith dispute between an attorney and client over the agreed-upon fee to be charged, there are other avenues that may be better suited than disciplinary proceedings to resolve the civil contractual dispute between the parties. *See* N.D.R. Prof. Conduct 1.5, Comment 9 (suggesting submission to arbitration when there is a fee dispute). The disciplinary process is reserved for those situations where an attorney has charged an excessive fee beyond the scope of reasonableness in light of the usual and customary fees charged in the locality by similar attorneys for similar work."

Although the hearing panel found the terms of the fee agreements are unreasonable because they are inconsistent, a controversy over how the terms may be applied is a contractual dispute that would be better resolved through other means. *See Lee*, at ¶ 15.

7

[¶18] On this record, there is an inadequate showing that clear and convincing evidence establishes Bolinske violated N.D.R. Prof. Conduct 1.5(a). The hearing panel's findings do not support its conclusion that the structure of the fee agreements made them unreasonable. Bolinske did not violate N.D.R. Prof. Conduct 1.5(a).

B

[¶19] Bolinske argues insufficient evidence establishes he violated N.D.R. Prof. Conduct 1.15(e). Rule 1.15(e) deals with the safekeeping of property, and states:

> "When, in the course of representation, a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."

[¶20] The hearing panel found by clear and convincing evidence that Bolinske violated N.D.R. Prof. Conduct 1.15(e). The hearing panel explained its decision:

> "Clear and convincing evidence is present that Bolinske violated Rule 1.15(e), N.D.R.Prof. Conduct by failing to hold disputed funds separately from his own. After receiving the $10,000.00 payments from Carter and the Watsons, Bolinske deposited those funds into his operating account. After Carter and the Watsons terminated Bolinske and requested that their funds be returned, Bolinske provided no explanation to Carter or the Watsons regarding why he believed the funds were not subject to a refund, and failed to hold the funds separately from his own until any dispute over those funds was resolved, in violation of Rule 1.15(e) N.D.R.Prof. Conduct."

[¶21] Disciplinary counsel argues Bolinske violated N.D.R. Prof. Conduct 1.15(e) because he was aware of the fee dispute with Carter and the Watsons after they terminated his representation, but he failed to place the disputed funds in an account separate from his own until the dispute was resolved. Disciplinary counsel acknowledged and did not challenge Bolinske's initial deposit of the non-refundable fee funds in his personal bank account. Yet disciplinary counsel contends Bolinske was required to place the funds in a separate account when the dispute arose more than a year later.

8

[¶22] Rule 1.15(e), N.D.R. Prof. Conduct, requires a lawyer to keep property separate when the lawyer has possession of property in which two or more people claim an interest. For the rule to apply, the lawyer must have possession of the property at the time he becomes aware of the dispute. *Cf.* Cal. Eth. Op. 2006-171 (stating the rule is silent about situations in which a lawyer has properly withdrawn a fee and the client later disputes the fee; but once the fee is properly withdrawn from the trust account it is the attorney's personal property, the fee loses its trust fund account status, and there is no obligation to return the fees to the trust account); Colo. Eth. Op. 118 (Feb. 12, 2008) (stating, "If a lawyer properly withdraws client funds from the lawyer's trust account to apply to the lawyer's fees, in accordance with Colo. RPC 1.5 and the lawyer's agreement with the client, and the client subsequently disputes the lawyer's fee, the lawyer is not required or permitted to return the disputed amount to the lawyer's trust account that holds funds of any clients." Also stating if the funds are characterized as property of the lawyer, returning the funds to the trust account would constitute commingling in violation of Rule 1.15(a)).

[¶23] Here, no evidence shows Bolinske had possession of the property when he became aware of the dispute. Bolinske testified he initially placed the funds from Carter and the Watsons in the operating account for his firm, which was also his personal bank account. Disciplinary counsel did not allege Bolinske violated N.D.R. Prof. Conduct 1.15(a) or (c) by failing to place the funds paid for the non-refundable retainers in a trust account until they were earned, and therefore we assume for purposes of this opinion that the funds were properly placed in the operating account and were considered Bolinske's property. Thus, the dicta in *Hoffman*, 2013 ND 137, ¶ 27, 834 N.W.2d 636, notwithstanding, no evidence supports finding the funds were in Bolinske's possession.

[¶24] We conclude the evidence does not support finding Bolinske violated N.D.R. Prof. Conduct 1.15(e).

C

[¶25] Disciplinary counsel argues Bolinske violated N.D.R. Prof. Conduct 1.16(e) by failing to return Carter's and the Watsons' files to them and refund unearned fees after they terminated his representation.

[¶26] Rule 1.16(e), N.D.R. Prof. Conduct, explains the steps a lawyer must take when representation is terminated:

> "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client only to the extent permitted by Rule 1.19."

The comment to Rule 1.16 states, "Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client."

[¶27] The hearing panel found Bolinske violated N.D.R. Prof. Conduct 1.16(e), explaining:

> "Clear and convincing evidence has been shown that Bolinske violated Rule 1.16(e), N.D.R.Prof. Conduct by his failure to return client files and funds to Carter and the Watsons when requested after his termination. Bolinske had an obligation to return a copy of the complete files to the Watsons and Carter.
>
> "Bolinske claimed he is due hundreds of thousands of dollars for his work on Carter's file and the Watsons' file. Bolinske may have an equitable argument under a quantum meruit theory to recover payments for his work on Carter and the Watson's files. Bolinske testified he spent a year and a half on these cases. Bolinske testified he arranged a mediation with Tesoro and a vice president and their attorney participated in the mediation. Bolinske did provide legal services for Carter and the Watsons. However, Bolinske kept no records of his time and expenses. Bolinske has the burden of proof to establish those funds were earned. *Disciplinary Bd. v. Moe*, 1999 ND 110, ¶ 14, 594 N.W.2d 317."

The hearing panel recommended that this Court order Bolinske to pay Carter and the Watsons $5,000 each in restitution.

(1)

10

[¶28] Evidence established Carter and the Watsons each sent Bolinske a letter requesting Bolinske take no further action regarding their cases, cease all written and phone correspondence with them, and send them their complete case files. Bolinske testified he did not surrender papers to which the clients were entitled, stating:

> "Carter told me not to contact him. . . . I didn't return the files because they didn't—they had everything, to my knowledge, that I've got. And what they gave me—Watson, I don't think, gave me anything in terms of a document, other than the fee agreement.
>
> "Carter, we sent back and forth—as I say, I talked to him constantly. We sent information back and forth. And, to my knowledge, everything that he gave me was a copy that—of some—of the original.
>
> ". . . I didn't think it was reasonable that I should, them already having it, somehow try to copy this and bear the expense of sending it, in addition to all the other work that I've done in this case. It seems like insult to injury to me."

Bolinske testified he did not return the files to Carter or the Watsons despite their requests. We conclude clear and convincing evidence establishes Bolinske violated N.D.R. Prof. Conduct 1.16(e) by failing to return the files to Carter and the Watsons after his representation was terminated.

(2)

[¶29] Disciplinary counsel argues clear and convincing evidence establishes Bolinske violated N.D.R. Prof. Conduct 1.16(e) by failing to return unearned portions of the retainers. "[U]pon a lawyer's termination of representation, a lawyer must refund any advance payment of fee or expense not earned or incurred, particularly in cases where the attorney did not complete the contemplated work for which the attorney was retained." *Hoffman*, 2013 ND 137, ¶ 23, 834 N.W.2d 636. This ruling applies to "non-refundable" fees that have become the lawyer's property. *Id.* at ¶ 26.

[¶30] Disciplinary counsel asserts and the hearing panel found Bolinske had the burden to prove he earned all of the fees he received. Both cite *Disciplinary Bd. v. Moe*, 1999 ND 110, ¶ 14, 594 N.W.2d 317, for support. That portion of the *Moe* decision merely discusses the respondent's argument he had a quantum meruit claim

11

for attorneys fees in a workmen's compensation claim. The case is unhelpful in determining who has the burden of proving a disciplinary violation.

[¶31] Disciplinary counsel has the burden in disciplinary proceedings to prove each alleged violation by clear and convincing evidence. *See Hoffman*, 2013 ND 137, ¶ 5, 834 N.W.2d 636. Disciplinary counsel had the burden to prove that at least a portion of the collected fees had not been earned under the agreements, and that Bolinske was required to refund that unearned portion. *See id.* Upon such a showing, the burden shifted to Bolinske to prove the amount of fees he earned.

[¶32] Evidence established the fees were paid for Bolinske to investigate, prepare, and bring claims against Tesoro. Bolinske testified he did not record the time he spent working on the matter because it was a contingency fee case and he did not need to bill the clients. But he presented some evidence of work done for Carter and the Watsons, including copies of emails, letters, and dated notes from phone calls related to the case.

[¶33] The record includes evidence of numerous phone calls with Carter, and emails and letters to Tesoro about Carter's claims. Bolinske testified he communicated with Carter "constantly." Additional significant documentary evidence shows Bolinske corresponded with Tesoro, including attempts to settle the dispute before engaging in mediation. Evidence established Bolinske represented Carter in mediation with Tesoro, which was held on July 27, 2016, and Bolinske completed a significant amount of legal work for Carter leading up to and including the mediation. From this record we conclude disciplinary counsel failed to establish by clear and convincing evidence that any portion of the non-refundable fee Carter paid was not earned, and that Bolinske was required to refund any of the funds Carter paid.

[¶34] The parties and the hearing panel generally applied the law and argued the facts as if Carter's and the Watsons' situations were the same. They were not. The Watsons hired Bolinske in August 2016, and terminated the representation on July 25, 2017. Their termination letter indicated they were unhappy with the services Bolinske provided, stating:

"I am writing this letter to bring to your attention my concern of the lack [of] action on your part that has been performed to move my case to the filing process in the Federal District Court of North Dakota.

"This is in addition to your having provided no documentation, either verbal or in writing, for any transfer, movement or accountability regarding funds, case-related costs incurred or billable work regarding my case. Your lack of action has caused me both financial and personal difficulty.

"On August 23, 2016 you told me that you would personally move forward aggressively with my complaints against Tesoro by filing the appropriate documents to the court within the next few weeks. On September 2nd, 2016 I wired $10,000 to your personal bank account, as instructed. It has now been eleven months and the documents have not been filed.

. . . .

"Regarding your Tesoro correspondence, [o]n October 12, 2016 you submitted a document to Tesoro and their Legal representative . . . directing them to respond by October 28, 2016. No other form of written communication was provided by you until March 4, 2017 in which you again instructed Tesoro to provide their communication by March 24, 2017.

"Two 'saber rattling letters' in five months was what I received in legal representation."

[¶35] Bolinske began representing the Watsons in August 2016, after Carter's mediation with Tesoro. None of Bolinske's work leading up to and including the mediation was directly for the Watsons. While Bolinske had extensive communications with Carter, he testified he had very little contact with Gary Watson about this case. Little other evidence shows or explains the amount or nature of services Bolinske provided to the Watsons during the representation.

[¶36] The record includes a copy of a March 4, 2017 letter to Tesoro on behalf of Carter and the Watsons. The letter explained Carter's and the Watsons' claims, contained an offer to settle the disputes, and stated they would prepare and serve a summons and complaint if Tesoro did not respond to the settlement offer by March 24, 2017. The record is devoid of other correspondence relating to the Watsons' claims against Tesoro.

[¶37] Based on this record, we are unable to determine whether clear and convincing evidence establishes Bolinske violated N.D.R. Prof. Conduct 1.16(e) by failing to

13

refund any unearned fees to the Watsons after they terminated his representation when all or substantially all of the services contemplated by the fee agreement had not been performed. We remand the Watson matter to the hearing panel for determination whether Bolinske violated Rule 1.16(e) by failing to refund unearned fees (and if so, in what amount). Given the state of the current record, and our clarification of the respective burdens of proof, the panel may need to receive additional evidence.

III

[¶38] Having concluded Bolinske violated N.D.R. Prof. Conduct 1.16(e) by failing to return client files, we must determine the appropriate sanction. We are guided by the North Dakota Standards for Imposing Lawyer Sanctions to determine the appropriate sanction. *See In re Disciplinary Action Against Ward*, 2005 ND 144, ¶ 16, 701 N.W.2d 873. We consider: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." N.D. Stds. Imposing Lawyer Sanctions 3.0.

[¶39] The hearing panel considered N.D. Stds. Imposing Lawyer Sanctions 4.12, 7.2, and 9.22 (d), (e), (g), and (I), and recommended Bolinske be suspended from the practice of law for 30 days. Because we rejected the hearing panel's findings that Bolinske violated N.D.R. Prof. Conduct 1.5(a) or 1.15(e), we decline to impose the recommended discipline.

[¶40] Under N.D. Stds. Imposing Lawyer Sanctions 4.13, reprimand generally is appropriate when the lawyer is negligent in dealing with client property and causes injury or potential injury to a client. Bolinske violated N.D.R. Prof. Conduct 1.16(e) by failing to send copies of client files to Carter and the Watsons. Bolinske testified he did not send the clients copies of their files because he believed they already had copies of the documents. We conclude reprimand is the appropriate sanction in this case.

14

[¶41]   "The assessment of costs is a sanction imposed when a lawyer has engaged in professional misconduct." *In re Disciplinary Action Against Johnston*, 2015 ND 282, ¶ 36, 872 N.W.2d 300 (quoting *In re Disciplinary Action Against Feland*, 2012 ND 174, ¶ 48, 820 N.W.2d 672).  The costs and expenses of the disciplinary proceeding must be assessed against a disciplined lawyer unless otherwise ordered by the court or hearing panel.  N.D.R. Lawyer Discipl. 1.3(D).

[¶42]   Because Bolinske did not violate N.D.R. Prof. Conduct 1.5(a) or 1.15(e), it is appropriate to consider whether Bolinske should pay only partial costs and expenses of the disciplinary proceeding.  The assessment of costs when a lawyer has engaged in professional misconduct are addressed to this Court's discretion.  *Feland*, 2012 ND 174, ¶ 48, 820 N.W.2d 672.  When assessing partial cost of disciplinary proceedings, we often employ a proportional analysis. *See Hoffman*, 2013 ND 137, ¶ 36, 834 N.W.2d 636 (ordering payment of approximately one-third of the costs and expenses when one of three disciplinary charges were found meritorious);  *Feland*, 2012 ND 174, ¶ 50, 820 N.W.2d 672 (ordering payment of fifty percent of disciplinary costs and expenses for single, isolated negligent act that caused little or no injury that warranted only an admonition, which could have been imposed by an Inquiry Committee without the cost of formal proceedings or an evidentiary hearing); *Ward*, 2005 ND 144, ¶ 22, 701 N.W.2d 873 (ordering payment of twenty percent of total costs and expenses when attorney was found to have committed one of five alleged violations).

[¶43]   Disciplinary counsel filed an affidavit showing $10,034.21 in costs and expenses for the proceedings.  We will follow the proportional analysis of our prior cases and order Bolinske to pay partial costs and attorney's fees of this disciplinary action in the amount of $3,300.

IV

[¶44]   In both matters Bolinske violated N.D.R. Prof. Conduct 1.16(e) for failing to return client files and is reprimanded.  Bolinske is ordered to pay partial costs and

15

expenses of the disciplinary proceeding in the amount of $3,300. File no. 20190110 is remanded to the hearing panel for the further determination whether Bolinske violated Rule 1.16(e) by failing to refund to the Watsons any unearned portion of the $10,000 fee they paid Bolinske.

[¶45]   Daniel J. Crothers, Acting C.J.
        Jon J. Jensen
        Jerod E. Tufte
        Norman Anderson, S.J.
        David Nelson, S.J.


[¶46]   The Honorable David Nelson, S.J., sitting in place of VandeWalle, C.J., disqualified.

[¶47]   The Honorable Norman Anderson, S.J., sitting in place of McEvers, J., disqualified.

16