Filed 7/23/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 137

In the Matter of the Application for Disciplinary 

Action Against Michael R. Hoffman, A Member of 

the Bar of the State of North Dakota 

Disciplinary Board of the Supreme Court, Petitioner

v.

Michael R. Hoffman, Respondent

No. 20120290

Application for disciplinary action.

REFUND ORDERED.

Per Curiam.

Paul W. Jacobson, Disciplinary Counsel, P.O. Box 2297, Bismarck, N.D. 58502-2297, for petitioner.

Nancy Hollander (argued), Freedman Boyd Hollander Goldeberg Urias & Ward, P.A., 20 First Plaza Suite 700, Albuquerque, N.M. 87102; and Thomas A. Dickson (appeared), P.O. Box 1896, Bismarck, N.D. 58502-1896, for respondent.

Disciplinary Board v. Hoffman

No. 20120290

Per Curiam.

[¶1] Attorney Michael R. Hoffman objects to a report of a Hearing Panel of the Disciplinary Board of the Supreme Court, recommending that he be reprimanded, that he refund $25,460 with interest to Bradford Wetmore, a former client, and that he pay the costs of the disciplinary proceeding.  We conclude Hoffman did not violate N.D.R. Prof. Conduct 1.5(a) or 1.15(a) and (c) in his “minimum fee” agreement with Wetmore to provide legal services.  However, we conclude a “minimum fee,” even designated as nonrefundable, may still be subject to refund under N.D.R. Prof. Conduct 1.16(e) upon termination of the attorney-client relationship.  We therefore conclude Hoffman violated N.D.R.Prof. Conduct 1.16(e) in failing to refund any amount to Wetmore.  We decline to adopt the Hearing Panel’s recommendation for discipline, but instead order that Hoffman refund $25,460 to Bradford Wetmore, with interest at the legal rate from September 22, 2010.  We further order that Hoffman pay partial costs and expenses of the disciplinary proceeding in the amount of $2,400.

I

[¶2] In July 2010, Wetmore retained Hoffman to represent him in a criminal matter involving several felony charges, and the two executed a written contract for legal services.  The agreement provided that in exchange for a “minimum fee” of $30,000, Hoffman would defend the charges to dismissal, sentence or deferred imposition of sentence, including a jury trial if necessary.  The agreement also stated “[t]here is no refund of the minimum fee.”  Wetmore paid Hoffman $30,000 and an additional $1,000 for an advance payment of expenses, as required in the contract.  Hoffman placed the $30,000 in his operating account.

[¶3] According to the evidence at the hearing, Hoffman had conferences with Wetmore on July 16, August 4, and August 27, 2010; he wrote the prosecuting attorney a letter on August 27, 2010, and received a fax from Wetmore on September 8, 2010; he began preparing for a preliminary hearing on September 16, 2010; he appeared at a 45-minute preliminary hearing in the case on September 21, 2010; he had a two-hour meeting with Wetmore after the preliminary hearing; and Wetmore terminated his employment on September 22, 2010.  After terminating Hoffman’s employment, Wetmore asked him to return the “unearned portion” of the $30,000 payment, but Hoffman refused.

[¶4] In August 2011, Disciplinary Counsel petitioned for discipline against Hoffman regarding his employment contract with Wetmore, alleging violations of N.D.R. Prof. Conduct 1.5(a), Fees; N.D.R. Prof. Conduct 1.15(a) and (c), Safekeeping Property; and N.D.R. Prof. Conduct 1.16(e), Declining or Terminating Representation.  Hoffman denied the allegations.  A Hearing Panel heard the case and found that Hoffman represented Wetmore for approximately two and one-half months, expended 25.8 hours on the case, and was also working on other cases during this time.  The Hearing Panel concluded that Hoffman violated the rules as charged and recommended that he receive a reprimand, return $25,460 to Wetmore, and pay the costs of the disciplinary proceeding.  Hoffman objected to the Hearing Panel’s recommendations.

II

[¶5] We have summarized our standard for reviewing disciplinary proceedings:

We review disciplinary proceedings de novo on the record.  Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction.  We give the Disciplinary Board’s findings, conclusions, and recommendations due weight, but we do not act as a mere rubber stamp.  We consider each disciplinary matter on its own facts to decide which sanction, if any, is appropriate.

In re Disciplinary Action Against Hann
, 2012 ND 160, ¶ 14, 819 N.W.2d 498 (citations and quotations omitted).

III

[¶6] Hoffman raises three issues in response to the Hearing Panel’s recommendations.  He argues that his $30,000 non-refundable minimum fee was reasonable under N.D.R. Prof. Conduct 1.5(a) and earned under N.D.R. Prof. Conduct 1.16(e); that as a non-refundable retainer, he properly placed the $30,000 in his operating account; and that his due process rights are violated by the Hearing Panel’s reliance on New York law and ex post facto or retroactive application of 
In the Matter of Cooperman
, 633 N.E.2d 1069 (N.Y. 1994) (holding special nonrefundable retainer fee agreements are against public policy and transgressing the Code of Professional Responsibility).

[¶7] The Hearing Panel concluded that Wetmore was obligated to pay a $30,000 “minimum fee” for Hoffman’s representation through “dismissal, or sentence or deferred imposition of sentence, including jury trial,” under the employment agreement’s terms, but that Hoffman’s employment was terminated before any of the agreement’s specified events.  Although the agreement stated there was no refund of the “minimum fee” and Hoffman refused to return any of the $30,000, the Panel cited N.D.R. Prof. Conduct 1.16, cmt. 5, and explained that a client has the right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer’s services.  The Hearing Panel concluded that a reasonable fee in this case would be one which compensated Hoffman for the work he had done but would not impose a hurdle or barrier to Wetmore’s right to discharge his attorney, and that Hoffman only was required to incur approximately 25.8 hours of work over a two and one-half month period during which he worked for other clients.

[¶8] The Hearing Panel found that the “diversity” of the fee agreements in North Dakota countervails the Rule 1.5 consideration of the fee charged in the locality for similar legal services.  The Hearing Panel concluded that $4,540, rather than $30,000, was a reasonable fee for Hoffman’s work under N.D.R. Prof. Conduct 1.5(a)(1).  The Hearing Panel found that Hoffman’s admission that he placed the $30,000 in his operating account showed a violation of N.D.R. Prof. Conduct 1.15 and that Hoffman violated Rule 1.16(e) when he failed to refund any “advance payment of the fee” that was not earned.  The Hearing Panel essentially treated the $30,000 payment as a type of unearned advance payment, to have been deposited in Hoffman’s trust account, rather than a general retainer or fully-earned flat fee.  The Hearing Panel found clear and convincing evidence that Hoffman violated N.D.R. Prof. Conduct 1.5, 1.15, and 1.16.

A

[¶9] Hoffman argues that his $30,000 nonrefundable “minimum fee” was both reasonable under N.D.R. Prof. Conduct 1.5(a) and earned under N.D.R. Prof. Conduct 1.16(e), as consistent with decisions from other jurisdictions holding nonrefundable minimum fees are ethically permissible.  
See
 
Grievance Adm’r, Attorney Grievance Comm’n v. Cooper
, 757 N.W.2d 867 (Mich. 2008); Ariz. State Bar Ethics Op. 10-03 (2010); Ky. Bar Ass’n Ethics Op. E-380 (1995); Utah State Bar Ethics Advisory Comm. Op. No. 136 (1993).  Hoffman contends his written fee agreement and his verbal explanation of the agreement to Wetmore were unambiguous and did not violate either Rule 1.5(a) or Rule 1.16(e).  Hoffman asserts that he has practiced law in North Dakota since 1987, knew the fees customarily charged in North Dakota criminal cases, including nonrefundable fees, and that notable defense attorneys in North Dakota have charged nonrefundable flat or minimum fees.  Hoffman submitted documentary evidence of other similar agreements.  Hoffman testified that his $30,000 fee was within the fees customarily charged in North Dakota and was reasonable, and his expert testified it was reasonable and perhaps a little low.

[¶10] Hoffman also contends he was justified in taking into account the reason Wetmore was possibly switching lawyers, maintaining he took over this serious case from another attorney and was suspicious Wetmore was only changing lawyers to obtain a continuance.  Hoffman claims he made it clear to Wetmore the minimum fee was nonrefundable and he wanted to be compensated for his availability, the time and responsibility invested, and the risk he assumed.  Hoffman argues he properly placed the $30,000 in his operating account rather than his trust account because a nonrefundable fee becomes the property of the lawyer when paid, and such funds should not be placed in a trust account.  He relies on his expert’s testimony that the $30,000 nonrefundable fee properly went into his operating account.  Hoffman contends his due process rights are violated by the Hearing Panel’s reliance on 
In the Matter of Cooperman
, 633 N.E.2d 1069, and applying the case to him retroactively or ex post facto.

B

[¶11] Our Rules of Professional Conduct require an attorney’s fee to be reasonable and require the basis, rate, or fee amount to be adequately communicated to the client within a reasonable time after commencing representation.  N.D.R. Prof. Conduct 1.5(a) and (b); 
see
 
In re Disciplinary Action Against Hellerud
, 2006 ND 105, ¶ 9, 714 N.W.2d 38.  “Violating the Professional Conduct Rules can subject an attorney to discipline.”  
Hellerud
, at ¶ 9.  Rule 1.5(a), N.D.R. Prof. Conduct, states that “[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses,” and lists eight factors to be considered in deciding the reasonableness of a fee:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

[¶12] Additionally, Rule 1.15, N.D.R. Prof. Conduct, provides the lawyer’s responsibility for the safekeeping of property, stating in part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer’s possession in connection with a representation separate from the lawyer’s own property.  Funds shall be deposited in one or more identifiable interest bearing trust accounts in accordance with the provisions of paragraph (f).  Other property shall be identified as such and appropriately safeguarded.  Complete records of such account funds and other property shall be kept by the lawyer in the manner prescribed in paragraph (h). 

. . . .

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred. 

[¶13] This case, as with other cases of this type, presents difficulties because courts struggle over the varying use of terminology in analyzing retainer agreements.  
See
 
Hann
, 2012 ND 160, ¶ 21, 819 N.W.2d 498.  Under N.D. Prof. Conduct 1.5(a), a lawyer is precluded from making an agreement for, charging, or collecting an “unreasonable fee,” and the rule provides factors to analyze in deciding reasonableness.  Rule 1.15, N.D.R. Prof. Conduct, addresses the lawyer’s responsibility for the safekeeping of property, requiring a lawyer hold a client’s property separate from the lawyer’s own property and deposit legal fees and expenses “paid in advance” into a client trust account to be withdrawn only “as fees are earned.”

[¶14] In 
Hann
, 2012 ND 160, ¶ 25, 819 N.W.2d 498, this Court stated that “our recent decisions suggest that even in flat fee agreement situations, there are necessarily factual determinations regarding whether the entire flat fee was ‘earned’ and whether any portion of the fee must be refunded, when the initially contemplated legal work under the agreement was not completed.”  
See
 
Hann
, at ¶ 25 (citing 
In re Disciplinary Action Against Rozan
, 2011 ND 71, ¶ 30, 796 N.W.2d 384 (Crothers, J., concurring in part and dissenting in part) (citing N.D.R. Prof. Conduct 1.16(e)) (lawyers duty upon termination of representation to refund “any advance payment of fee or expense that has not been earned or incurred”); 
In re Disciplinary Action Against Karlsen
, 2008 ND 235, ¶ 9, 778 N.W.2d 522 (“the Hearing Panel found Karlsen was hired to represent [client] in an immigration matter for which he was charged a non-refundable flat fee; Karlsen did not finish the work and did not refund the unearned portion of the fee.”); 
Disciplinary Bd. v. Madlom
, 2004 ND 206, ¶ 7, 688 N.W.2d 923 (“Madlom charged a ‘non-refundable’ $750 fee to prepare and file a Chapter 7 bankruptcy petition . . . but failed to make a refund of fees when representation was terminated before the bankruptcy petition was filed in violation of N.D.R. Prof. Conduct 1.5(a).”)).  This Court reiterated that any agreement must meet the standards of “reasonableness,” which apply to all fee agreements under N.D.R. Prof. Conduct 1.5.  
Hann
, at ¶ 25.

[¶15] Although Disciplinary Counsel asserts that 
Hann
 requires the conclusion that the nonrefundable “minimum fee” Hoffman charged in this case, which was deposited in Hoffman’s operating account, violated N.D.R. Prof. Conduct 1.5(a) and 1.15(a) and (c), this Court has not yet adopted a rule barring the use of nonrefundable fee agreements as against public policy and per se unreasonable.  
See, e.g.
, 
Cooperman
, 633 N.E.2d 1069.  Nor has this Court approved a broad rule permitting any type of nonrefundable fee agreement.  
See
 
Hann
, 2012 ND 160, ¶¶ 22-24, 819 
N.W.2d
 498 (rejecting reliance on 
Richmond v. Nodland
, 501 
N.W.2d
 759 (N.D. 1993), for the broad proposition that nonrefundable retainers are legal, permitting all nonrefundable retainer agreements).  Rather, in 
Hann
, at ¶ 21, this Court acknowledged the difficulty in analyzing retainer agreements and generally discussed the various approaches for construing these agreements.  We then reviewed the specific agreement at issue in that case, concluding we did not need to set forth the “permissible parameters of nonrefundable retainers” because the case did not involve a nonrefundable agreement with the client.  
Id.
 at ¶ 26.  Using the same approach in this case, we review the relevant terms of the contract for legal services between Hoffman and Wetmore.

[¶16] The contract between Wetmore and Hoffman predated our holding in 
Hann
 by two years and provided, in relevant part:

3.  Counsel shall defend the case to dismissal, or sentence or deferred imposition of sentence, including a jury trial if necessary. Defense shall include investigation.  Counsel agrees to and shall perform the services to the best of his ability and put forth his best effort in defense of the case.

4.  
FEE
:  In consideration for Counsel’s legal services in paragraphs 2 and 3 above, Client does hereby agree to pay Counsel a fee in money as follows:

a. $ 
  ————  
 flat fee.  There is no refund of this flat fee.

OR

b.  $ 
30,000
 minimum fee, plus Counsel’s hourly rate for time put in over the minimum fee.  Counsel’s hourly rate is $175.00 per hour out of court, and $200.00 per hour in court.  Counsel keeps track of all services and time put in on a case, and this information is generally provided to Client monthly.  Any fee due over the minimum fee will be billed to Client monthly and is due upon receipt.  There is no refund of the minimum fee.

. . . .

6.  
TRUST ACCOUNT
: Client agrees to pay $ 
1000.00
 in advance into Counsel’s trust account for payment of costs and expenses, and for possible, future incurred attorney fees, and to 
replenish
 the trust account money as needed and agreed to by the parties.  Trust account money is Client’s money, but Client hereby agrees that Counsel can draw on the money for costs and expenses, and unpaid attorney fees.  The status of the trust account money, including draws and balance, will be provided to Client in the monthly billing. Any unused trust account money at the conclusion of the case will be returned to Client upon final billing. 

. . . .

8.  Counsel shall have the right to move the court for withdrawal from representation of Client at any time for any failure by Client to pay Counsel for any money due Counsel under this agreement. Additionally, IF AT THE TIME OF THE PRETRIAL CONFERENCE CLIENT IS GOING TO CONTINUE A PLEA OF NOT GUILTY AND THE CASE IS TO BE SCHEDULED FOR JURY TRIAL, THEN CLIENT AGREES TO PAY TO COUNSEL, IF NOT ALREADY PAID, PRIOR TO THE PRETRIAL CONFERENCE, ALL OF ANY BALANCE DUE COUNSEL AT THAT TIME, PLUS AT COUNSEL’S OPTION, TO COUNSEL’S TRUST ACCOUNT, AN ESTIMATED AMOUNT OF MONEY TO INSURE THE PAYMENT OF ATTORNEY FEES AND COSTS FOR THE JURY TRIAL. COUNSEL WILL PROVIDE SUCH AMOUNTS TO CLIENT PRIOR TO THE PRETRIAL CONFERENCE. FAILURE BY CLIENT TO PAY SUCH AMOUNTS PRIOR TO THE PRETRIAL CONFERENCE SHALL BE CAUSE FOR COUNSEL TO MOVE THE COURT FOR WITHDRAWAL FROM REPRESENTATION OF CLIENT IN THE CASE ON OR BEFORE THE TIME OF THE PRETRIAL CONFERENCE.  At any time after the pretrial conference, and before trial, Counsel may require, at his option, that Client pay into his trust account an estimated amount of money to insure the payment of attorneys fees and cost for trial, if not already paid by Client.  A failure to pay fees and costs under this agreement is a breach of this agreement.

9.  IF CLIENT BREACHES THIS AGREEMENT AS TO ATTORNEY FEES OR COSTS, CAUSING COUNSEL TO WITHDRAW FROM REPRESENTING CLIENT, OR FOR ANY OTHER REASON GIVES THE COURT CAUSE TO ALLOW COUNSEL TO WITHDRAW, CLIENT WILL NOT BE ENTITLED TO ANY REFUND OF ANY PREVIOUSLY PAID FEES.

. . . .

[¶17] In addition to signing the original contract, Hoffman had Wetmore specifically initial provisions 4(b) and 6 of the contract.  The plain language of the contract unambiguously states the amount charged is a “minimum fee,” the client will be billed for any fee due over the minimum fee, and there is no refund of the minimum fee.  Further, it is also clear from the language that the only amount to be paid into Hoffman’s trust account is $1,000 for payment of costs and expenses.  Thus, under the terms of the contract, Hoffman and Wetmore agreed the $30,000 fee was paid to retain Hoffman’s services, that the $30,000 was a nonrefundable “minimum fee,” that the fee immediately became Hoffman’s property on payment, and that the $30,000 fee would not be held in Hoffman’s trust account.

[¶18] We also consider whether the amount provided for and charged in the agreement was reasonable under N.D.R. Prof. Conduct 1.5.  The record shows Hoffman was taking over a serious felony case from another attorney, and Hoffman testified he was concerned Wetmore was changing attorneys to obtain a continuance of the preliminary hearing.  On July 7, 2010, Wetmore signed Hoffman’s fee contract and employed Hoffman to defend him on four counts of gross sexual imposition.  In testimony before the Hearing Panel, Wetmore acknowledged that he had discussed the written contract with Hoffman before signing it.  Hoffman testified that he went over the contract in detail because of the “red flags” presented by Wetmore, in that Wetmore was firing another attorney for whom Hoffman had respect, that there was a long history with the case, that it would be a difficult case, and that Wetmore had a tendency to repeat himself in their meetings and not stay focused.  Hoffman also testified that Wetmore was talking about hiring numerous experts and demanding Hoffman talk to them at very early stages of the proceedings.  Hoffman testified that he felt the need to protect himself.  Further, Hoffman was aware that Wetmore had fired a lawyer just before the first scheduled preliminary hearing, that there would be another preliminary hearing scheduled, and Hoffman was concerned Wetmore would again switch lawyers before the next hearing.  Hoffman also testified that he wanted to be compensated for his availability, for the time and responsibility he invested, and for the risk he assumed in the early stages of a serious case involving multiple felonies.

[¶19] Under the facts and circumstances of this case, we conclude that the $30,000 “minimum fee” initially charged in the legal services contract was reasonable under the factors in Rule 1.5(a).  We reject the Hearing Panel’s recommendation to find violations of N.D.R. Prof. Conduct 1.5(a) and 1.15(a) and (c), because we conclude that the “minimum fee” charged by Hoffman in the initial agreement retaining his services was reasonable under the facts and circumstances.  Further, because the fee was considered Hoffman’s property and would not be deposited in a trust account by their agreement, Hoffman did not violate Rule 1.15 by depositing the fee in his operating account.

IV

[¶20] Although we conclude that Hoffman did not violate N.D.R. Prof. Conduct Rules 1.5(a) and 1.15(a) and (c), by entering into the minimum fee agreement, we still must examine the lawyer’s obligations under N.D.R. Prof. Conduct 1.16(e), when the lawyer’s services are terminated.

[¶21] Rule 1.16(e), N.D.R. Prof. Conduct, describes steps a lawyer must take when the representation of the client is terminated:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client’s interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled 
and refunding any advance payment of fee or expense that has not been earned or incurred
.  The lawyer may retain papers relating to the client only to the extent permitted by Rule 1.19.

(Emphasis added.)

[¶22] Comment 5 to N.D.R. Prof. Conduct 1.16 states that “[a] client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer’s services.  Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.”  
See also
 N.D.R. Prof. Conduct 1.5 cmt. 4 (“A lawyer may require advance payment of a fee, but is obliged to return any unearned portion.  See Rule 1.16(e).”).  The North Dakota Rules of Professional Conduct are based in part on the ABA’s Model Rules of Professional Conduct.  
Hann
, 2012 ND 160, ¶ 20, 819 
N.W.2d
 498.  The Model Rules also have a provision similar to N.D.R. Prof. Conduct 1.16.  
See
 Annotated Model Rules of Prof’l Conduct, R. 1.16 (7th ed. 2011).  As such, “we may find ‘other authorities’ interpretations of the Model Rule or its state counterpart persuasive’ when ‘[o]ther states have also adopted the Model Rules.’” 
Hann
, at ¶ 20 (quoting 
In re Disciplinary Action Against Dyer
, 2012 ND 118, ¶ 21, 817 
N.W.2d
 351).

[¶23] Our recent cases have been clear that, upon a lawyer’s termination of representation, a lawyer must refund any advance payment of fee or expense not earned or incurred, particularly in cases where the attorney did not complete the contemplated work for which the attorney was retained.  
See, e.g.
, 
Hann
, 2012 ND 160, ¶ 27, 819 
N.W.2d
 498; 
Karlsen
, 2008 ND 235, ¶¶ 9, 16, 778 
N.W.2d
 522; 
In re Disciplinary Action Against Sundby
, 2005 ND 135, ¶¶ 14-18, 701 
N.W.2d
 863; 
Madlom
, 2004 ND 206, ¶¶ 7, 10, 688 
N.W.2d
 923.  Our decisions have not been as clear regarding the lawyer’s obligation to refund “nonrefundable” fees, where a client purportedly breaches a contract for legal services and where the lawyer is appropriately performing services as anticipated under the contract.

[¶24] However, courts have suggested that, regardless of how fees are designated by an agreement between an attorney and client, Rule 1.16 may require fees be returned to the client.  The Annotated Model Rules of Prof’l Conduct, R. 1.16 annot. at p. 265, suggests that a lawyer may still have a duty to refund fees which have been considered property of the attorney and not held in trust:

Even if advance fees are by agreement not being held in trust for a client, they may still be subject to refund if later determined not to have been unearned.  
See
 
In re Sather
, 3 P.3d 403 (Colo. 2000) (attempt to label fees as “nonrefundable” did not relieve lawyer of duty to return unearned fees upon discharge); 
Dowling v. Chi. Options Assocs.
, 875 N.E.2d 1012 (Ill. 2007) (advanced fees already property of lawyer still “are subject to a lawyer’s duty to refund any unearned fees, pursuant to Rule 1.16”); Mo. Formal Ethics Op. 128 (2010) (Rule 1.16 requires any fee, even flat fee or security retainer that has become property of lawyer, to be refunded if not earned); Douglas R. Richmond, 
Understanding Retainers and Flat Fees
, 34 J. Legal Prof. 113 (Fall 2009) (“lawyers cannot escape their Rule 1.16 . . . duty simply by labeling fees as earned upon receipt or declaring them non-

refundable”).

[¶25] Courts have discussed that while nonrefundable retainers may be permitted, there is also a general reasonableness standard, including a requirement that the total fee charged must be “reasonable.”  
See
 
Kentucky Bar Ass’n v. Earhart
, 360 S.W.3d 241, 244 (Ky. 2012).  Thus, even when a fee agreement is designated “nonrefundable” and is reasonable at the time of entering the agreement, an attorney may be required to refund any advanced fee that has not been earned under Rule 1.16, incorporating the concept that the “total” fee must still be reasonable.  
Id.
 

“In determining the ‘reasonableness’ of a lawyer’s fee, the factors mentioned in Rule 1.5(a) apply, and the lawyer has the responsibility to prove the ‘reasonableness’ of the fee applying principles of equity and fairness.  Although ‘reasonableness’ at the time of contracting is relevant, consideration is also to be given to whether events occurred after the fee agreement was made which rendered the fee agreement fair at the time it was entered into, but unfair at the time of enforcement.  
See
 
McKenzie Constr., Inc. v. Maynard
, 758 F.2d 97 (3rd Cir. 1985).  Hence, the client may be entitled to a return of some portion of the ‘non-refundable’ fee retainer upon the termination of the representation, depending upon all the circumstances; that is, the ‘reasonableness’ of the fee.”

Earhart
, 360 S.W.3d at 244.  
See also
 
In re Smith
, 659 N.E.2d 896, 907 (Ill. 1995) (client may discharge lawyer at any time for any reason, and a lawyer is not entitled to the full amount of fees contractually agreed to following the discharge, but is only to be compensated on a quantum meruit basis for legal services actually performed on the client’s behalf).

[¶26] While it may be quite understandable that a criminal defense attorney would need to collect a sizable retainer to assure payment, the retainer in circumstances of termination of representation may represent a windfall, and all fees are subject to an analysis of reasonableness.  Depending on the stage of the proceedings, a court may be loathe to allow a lawyer out of a criminal defense case for nonpayment of fees.  Nonetheless, even under these circumstances when the attorney and client have plainly agreed that a “minimum fee” is nonrefundable and has become the lawyer’s property, we believe that N.D.R. Prof. Conduct 1.16(e) still requires a lawyer to refund upon termination any portion of the fees collected that a lawyer has not yet “earned” under the agreement, so that the total fee collected is not “unreasonable” under N.D.R. Prof. Conduct 1.5 for the legal services actually performed on the client’s behalf.

[¶27] Although nonrefundable “minimum fee” agreements may be permissible, in that such agreements are not per se unreasonable under N.D.R.Prof. Conduct 1.5 and permit a fee received under such agreement to immediately become the lawyer’s property, a lawyer’s obligations under N.D.R.Prof. Conduct 1.15(e) remain if a client fee dispute subsequently arises.  Rule 1.15(e), N.D.R.Prof. Conduct, provides:

When, in the course of representation, a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

Thus, even when a nonrefundable “minimum fee” has become the lawyer’s property upon receiving payment under an agreement, the lawyer will need to segregate any money in dispute into a trust account, until such dispute between the lawyer and client is resolved.  Clearly, the lawyer is at greater risk in this position when there is a fee dispute under an agreement and the lawyer does not have sufficient funds to segregate into a separate account.  In this proceeding, however, the petition for discipline contains no allegation against Hoffman of a violation of N.D.R.Prof. Conduct 1.15(e).  
See
 
In the Matter of Ellis
, 504 
N.W.2d
 559, 562 (N.D. 1993) (attorneys subjected to disciplinary proceedings entitled to procedural due process, which includes “fair notice of the charge”).

[¶28] We conclude that Hoffman violated N.D.R. Prof. Conduct 1.16(e) in failing to refund any fees after Wetmore terminated his services at a time when all or substantially all of the services contemplated under the contract had not been performed.

A

[¶29] Having concluded Hoffman violated N.D.R. Prof. Conduct 1.16(e), we must decide the appropriate sanction.  The Hearing Panel recommended a reprimand after considering N.D. Stds. Imposing Lawyer Sanctions 4.12; 9.2(b), (g), (h), and (i); and 9.3(a) and (g).

[¶30] Here, we have concluded that Hoffman violated N.D.R. Prof. Conduct 1.16(e) by failing to refund any fees paid under a nonrefundable “minimum fee” agreement after his client terminated his services, but we have rejected the Hearing Panel’s findings that Hoffman violated N.D.R. Prof. Conduct 1.5 and 1.15.  Under the circumstances of this case, we decline to impose the recommended discipline, but order a refund to the client.

[¶31] Here, as discussed, Hoffman and Wetmore freely contracted for Hoffman’s services with what was purported to be a nonrefundable “minimum fee.”  At the time of the fee agreement in this case, this Court had not clearly ruled on the permissibility of nonrefundable fee agreements under our Rules of Professional Conduct, nor had we previously held that a lawyer may be required to refund any portion of a so-

designated nonrefundable fee under N.D.R. Prof. Conduct 1.16(e) in circumstances where a client terminated the lawyer’s services.  To that end, this Court’s prior decisions may have been relied on for generally using nonrefundable retainer agreements.  
See
 
Hann
, at ¶ 40 (citing 
Richmond
, 501 
N.W.2d
 759)).  In this case, there is no evidence that Hoffman breached the contract for legal services with Wetmore; rather Wetmore terminated Hoffman’s representation after previously terminating another attorney’s representation.  Furthermore, the agreement between Hoffman and Wetmore was entered before this Court’s decision in 
Hann
, which should have put lawyers on notice that unlimited usage of nonrefundable “minimum fee” agreements may be in question.  To the contrary, there was evidence presented at the hearing that these types of agreements are common among the criminal defense bar in North Dakota.

B

[¶32] Having determined not to impose the recommended disciplinary sanction for Hoffman’s conduct, we nevertheless must decide the appropriate amount Hoffman must refund to Wetmore.  While there is a freedom of contract concern to some extent in regulating what an attorney may charge, lawyers “owe their clients greater duties than are owed under general contract law,” and courts may make “their own inquiries about the reasonableness of legal fees as a part of their inherent authority to regulate the practice of law.”  
Hellerud
, 2006 ND 105, ¶ 13, 714 
N.W.2d
 38.

[¶33] Hoffman testified at least one of the grounds for not refunding any portion of the $30,000 minimum fee was the fact that Wetmore had terminated Hoffman’s representation and that Hoffman had not breached the contract.  The contract contemplated providing legal services through dismissal, or sentence or deferred imposition of sentence, including a jury trial.  Hoffman’s services, however, were terminated after the preliminary hearing.  We have construed N.D.R. Prof. Conduct 1.16(e) as permitting the client to terminate representation at any time, and despite any contrary contract language, the lawyer is entitled to be compensated to the date of termination.  This is, of course, also in consideration of the factors under N.D.R. Prof. Conduct 1.5.

[¶34] In this case, the Hearing Panel, in considering the factors under Rule 1.5, found that Hoffman had represented Wetmore for about two and one-half months, expended 25.8 hours on the case, and was also working on other cases during this time.  Hoffman testified that he had turned away other work, but the value of that work is not clear.  Hoffman correctly argues that he is not limited to only consideration of an hourly fee in determining what would constitute “reasonable” fees under N.D.R. Prof. Conduct 1.5.  However, under these facts and circumstances, while a lawyer is not necessarily limited to an hourly rate for compensation, we do not disagree with the Hearing Panel’s findings that the work done under the agreement before Hoffman’s termination had a value of $4,540.  We conclude that Hoffman is entitled to compensation for that work but must refund $25,460 to Wetmore with interest under N.D.R. Prof. Conduct 1.16(e).

C

[¶35] “The assessment of costs is a sanction imposed when a lawyer has engaged in professional misconduct.”  
Feland
, 2012 ND 174, ¶ 48, 820 
N.W.2d
 672.  We have further explained that “[u]nder N.D.R. Lawyer Discip. 1.3(d), costs and expenses of the disciplinary proceeding must be assessed against a disciplined attorney ‘[u]nless otherwise ordered by the court or hearing panel.’”  
Id.
  We have thus held that we have the discretion to “‘otherwise order’ payment of costs and expenses.”  
Id.

[¶36] Here, we conclude that it would be appropriate to require Hoffman to pay partial costs and expenses of the disciplinary proceedings in the amount of $2,400, representing approximately one-third of the total costs and expenses.  
See
 
Feland
, 2012 ND 174, ¶ 50, 820 
N.W.2d
 672 (ordering payment of partial costs and expenses representing fifty percent of the total); 
In re Disciplinary Action Against Ward
, 2005 ND 144, ¶ 22, 701 
N.W.2d
 873 (requiring payment of twenty percent of total costs and expenses when attorney was found to have committed only one of five alleged violations).  Likewise, we order Hoffman to pay partial costs and expenses of the disciplinary proceeding in the amount of $2,400.

V

[¶37] We conclude Hoffman violated N.D.R. Prof. Conduct 1.16(e).  We order that Hoffman refund $25,460 to Wetmore, with interest at the legal rate from September 22, 2010, and with proof of payment to the Secretary of the Disciplinary Board within 60 days.  We further order that Hoffman pay partial costs and expenses of the disciplinary proceeding in the amount of $2,400.

[¶38] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring