2014 ND 44

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Henry H. HOWE, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner

v.

Henry H. Howe, Respondent.

No. 20130299.

Supreme Court of North Dakota.

March 11, 2014.

Brent J. Edison, Bismarck, ND, for petitioner.

Henry H. Howe, self-represented, Grand Forks, ND, respondent.

PER CURIAM.

[¶ 1] Attorney Henry H. Howe objected to a report of a hearing panel of the Disciplinary Board recommending that he be suspended from the practice of law for six months, that he pay costs and expenses of the proceedings and that he provide an accounting to his former clients of all costs and expenses incurred during the course of Howe's representation. We conclude clear and convincing evidence establishes Howe violated N.D.R. Prof. Conduct 1.1, competence; 1.3, diligence; and 1.4, communication. We order that Howe be suspended from the practice of law for six months and one day, that he pay $8,871.34 in costs of the disciplinary proceedings and that he provide his former clients an accounting of the costs and expenses associated with his representation.

I

[¶ 2] Howe was admitted to practice law in North Dakota on July 27, 1973 and

practices in Grand Forks as a member of the law firm Howe & Seaworth. Howe's disciplinary record includes suspensions ordered by this Court for 90 days in 1977 and 120 days in 2001, private reprimands from inquiry committees in 1988 and 1991 and admonitions from inquiry committees in 1995, 1998, 2001 and 2012. Howe is suspended by order of this Court for an unrelated matter, Supreme Court number 2014 ND 17, 842 N.W.2d 646.

[¶ 3] This proceeding arises from Howe's representation of Elias Angel Camacho–Banda and Margarita Maya–Morales (collectively "Camachos"). The Camachos, undocumented Mexican nationals, have lived in the United States for over twenty years. The Camachos have four United States citizen children and one Mexican citizen child. Subsequent to a February 2007 traffic incident, authorities discovered the Camacho adults and one child did not have legal immigration status. The Camachos were placed in removal proceedings before the Executive Office for Immigration Review, Immigration Court, in Bloomington, Minnesota. The Camachos retained Howe to represent them in the removal proceedings.

[¶ 4] During the immigration court's May 16, 2007 master calendar hearing, Howe conceded the Camachos were removable for staying in the United States past the time permitted and stated he would file their applications for cancellation of removal and adjustment of status. To prevail in canceling removal, the Camachos needed to establish removal would result in "exceptional and extremely unusual hardship to the alien's ... child, who is a citizen of the United States" under 8 U.S.C. § 1229b(b)(1)(D). The immigration judge informed Howe he needed significant documentation of hardship, including documentation of one child's alleged learning disability. On May 16, 2007, Howe received an information sheet for gathering "biometrics," which explained the process for collecting fingerprints and personal information as required at immigration proceedings before final status decisions are made. Howe did not file the applications for cancellation of removal until November 21, 2008.

[¶ 5] A merits hearing was held on December 1, 2008. Howe had not completed the biometrics process, including failing to obtain the Camachos' fingerprints. When asked why he did not complete the biometrics process, Howe blamed a calendaring error by his paralegal. Howe did not provide the hardship documentation requested by the judge, instead supplying only the children's school records. Further, the Camachos were the only witnesses called. The immigration judge chastised Howe for being unprepared, but allowed him thirty days to augment the Camachos' application for cancellation of removal. In addition to the clarification Howe already received on May 16, 2007 regarding supplemental materials the judge sought, the judge directed Howe to augment the file concerning the Camachos' son's learning disability, including letters from teachers and doctors and information regarding the special educational prospects in Mexico for a child with a learning disability.

[¶ 6] The merits hearing was rescheduled for January 13, 2009. The Camachos were not present at the hearing because Howe failed to notify them of the rescheduled hearing. Howe blamed a change in office personnel. Howe later gave conflicting testimony to the hearing panel that he spoke to the Camachos about the date change, but that a miscommunication occurred because the Camachos' daughter who usually translated was not present. The judge agreed to reschedule the merits hearing from January 13, 2009 to October 21, 2009, warning Howe that if the Camac-

hos again failed to appear, he would issue a removal order in their absence. The judge admonished Howe for failing to comply with formatting requirements for his filings.

[¶ 7] Before the rescheduled merits hearing, Howe resubmitted duplicate documents, including country conditions and school records. Howe's submission was rejected for failing to comply with filing requirements. Howe attempted to fix the issues by resending his submission. The court noted that all the documents still were improperly submitted, but that it would nonetheless accept them. On April 23, 2010, Howe submitted additional articles about violence in Mexico, offered to demonstrate hardship. The Camachos' merits hearing was rescheduled to April 8, 2011. Howe obtained letters from the Camacho children's teachers, including a letter from the special education teacher and case manager for the child with the learning disability. Howe argues that while he possessed the letters, in his opinion the letters would not have helped meet the exceptional and extremely unusual hardship standard and possibly could have made things worse.

[¶ 8] On April 8, 2011, Howe and the Camachos appeared at the rescheduled merits hearing, but because an interpreter was not available, the judge reserved the case for written submissions and closing arguments to be submitted within two weeks. Howe did not provide additional materials or submit written closing arguments. On November 15, 2011, the judge ordered the Camachos deported to Mexico. Howe was discharged, and the Camachos retained new counsel.

## II

[¶ 9] This Court decides disciplinary proceedings by making de novo review of the record compiled by the disciplinary board's hearing panel. *See Disciplinary Board v. Dyer*, 2012 ND 118, ¶ 8, 817 N.W.2d 351. This Court's procedure for reviewing disciplinary proceedings is:

"Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction. We give the Disciplinary Board's findings, conclusions, and recommendations due weight, but we do not act as a mere rubber stamp. We consider each disciplinary matter on its own facts to decide which sanction, if any, is appropriate."

*Disciplinary Board v. Hoffman*, 2013 ND 137, ¶ 5, 834 N.W.2d 636 (quoting *Disciplinary Board v. Hann*, 2012 ND 160, ¶ 14, 819 N.W.2d 498).

## III

[¶ 10] Howe argues that because the Disciplinary Office of the Federal Immigration Court did not take disciplinary measures, this Court should defer to their nonaction and refrain from imposing disciplinary measures in North Dakota. Rule 8.5(a), N.D.R. Prof. Conduct, provides:

"A lawyer admitted to practice in this jurisdiction is subject to disciplinary action in this jurisdiction even though the conduct of the lawyer giving rise to the discipline may have occurred outside of this jurisdiction and even when that conduct may subject or has subjected the lawyer to discipline by another jurisdiction."

This Court exercised jurisdiction over disciplinary matters arising from federal immigration proceedings involving North Dakota lawyers in the past. *Disciplinary Board v. Karlsen*, 2008 ND 235, 778 N.W.2d 522; *Disciplinary Board v. Vela*, 2005 ND 119, 699 N.W.2d 839; *Disciplinary Board v. Vela*, 2008 ND 42, 746

N.W.2d 1. Howe is a licensed North Dakota attorney. Under clear language in Rule 8.5(a), N.D.R. Prof. Conduct, and our judicial decisions, he is subject to discipline in this jurisdiction despite that the matter arose from a federal immigration proceeding and that disciplinary action was not taken by the federal immigration court. This Court has jurisdiction over this disciplinary case.

## IV

[¶ 11] Howe argues the hearing panel improperly accepted the immigration judge's comments as proof Howe failed to properly represent the Camachos. We decide disciplinary proceedings on a de novo review of the record and make our own determinations whether ethical violations have occurred. *Hann*, 2012 ND 160, ¶ 14, 819 N.W.2d 498.

## A

[¶ 12] Rule 1.1, N.D.R. Prof. Conduct, provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The knowledge and skill required in a particular case include consideration of the complexity of the matter and the lawyer's relevant training and experience. N.D.R. Prof. Conduct 1.1 cmt. 1. The comments also recognize that a lawyer may not need special training or experience to handle problems unfamiliar to the lawyer if the lawyer engages in adequate study. *Id.* at cmt. 2. Competence in a particular matter requires the "use of methods and procedures meeting the standards of competent practitioners" in a particular area, recognizing that some matters require more extensive treatment than others. N.D.R. Prof. Conduct 1.1 cmt. 6.

[¶ 13] To meet their burden for cancellation of removal, the Camachos were required to show exceptional and extremely unusual hardship to an American citizen family member. 8 U.S.C. § 1229b(b)(1)(D). Circumstances warranting a finding of exceptional and extremely unusual hardship include having a qualifying child with "compelling special needs in school." *In re Monreal–Aguinaga*, 23 I. & N. Dec. 56, 63 (BIA 2001). The immigration judge called Howe's attention to this burden during the December 1, 2008 hearing, requesting Howe to augment the application by providing letters from teachers and doctors and by providing information regarding education opportunities in Mexico for children with learning disabilities.

[¶ 14] Howe provided the immigration judge with school assessments, noting the Camachos' son showed signs of dyslexia and adhered to a special education plan. But Howe did not provide documentation about special education availability in Mexico or affidavits from teachers or other professionals regarding the nature or severity of the boy's learning disability. Howe claims the updated information from the teachers would not have shown exceptional and extremely unusual circumstances because the school's education plan was so effective for the child. While Howe may be correct concerning the strategy behind withholding the affidavits, Howe failed to recognize that the country condition reports he submitted did not show details concerning the special education opportunities available in Mexico. The country condition reports and articles Howe submitted focused on pervasive violence in Mexico and on more general education statistics and issues, rather than whether special education opportunities were or were not available in Mexico. Howe also demonstrated a lack of preparation, including repeatedly failing to follow

filing requirements, failing to file in a timely manner, failing to obtain supplementary information requested by the immigration judge and failing to provide a written submission or closing argument when given the opportunity.

[¶ 15] The hearing panel did not blindly accept the immigration judge's comments as conclusive proof, and neither does this Court. Based on Howe's failure to comply with the immigration court's procedures and his failure to follow the roadmap laid out by the immigration judge on December 1, 2008, clear and convincing evidence establishes Howe did not act competently and violated Rule 1.1, N.D.R. Prof. Conduct.

B

[¶ 16] Rule 1.3, N.D.R. Prof. Conduct, provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Reasonable diligence is defined as: "A fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." *Black's Law Dictionary* 468 (7th ed.1999). Prompt is defined as: "quick to act or to do what is required[.]" *Webster's New World Dictionary* 1137 (2nd ed.1980). "Perhaps no professional shortcoming is more widely resented than procrastination." N.D.R. Prof. Conduct 1.3 cmt. 3.

[¶ 17] Howe failed to diligently represent the Camachos in several ways. While Howe paid the biometrics fee and filed the biometrics forms, he did not obtain the Camachos' fingerprints and, therefore, did not complete the biometrics process before the merits hearing. The judge cannot make a decision regarding the Camachos' legal status in the United States until their updated criminal background information is obtained. 8 C.F.R. § 1003.47(g) ("In no case shall an immigration judge grant an application for immigration relief that is subject to the conduct of identity, law enforcement, or security investigations or examinations under this section until after [Department of Homeland Security ("DHS") ] has reported to the immigration judge that the appropriate investigations or examinations have been completed and are current...."). Even after the judge admonished Howe at the December 1, 2008 hearing to complete biometrics, Howe did not make an appointment for the Camachos to be fingerprinted before the January 13, 2009 merits hearing. Howe blamed a calendaring error to excuse his unpreparedness regarding the biometrics information, but he had more than a month to obtain the fingerprints, or at least make an appointment, before the January 13, 2009 hearing. Howe also failed to timely submit the applications for cancellation of removal. Howe stated on May 16, 2007 that he would file the Camachos' applications for cancellation of removal, yet he waited until November 21, 2008 to file the applications. The result was that the applications were filed just days before the merits hearing on December 1, 2008.

[¶ 18] Howe also failed to communicate with his clients concerning important hearing dates, causing them to miss their January 13, 2009 merits hearing. Howe first blamed the communication failure on a change in office personnel. He later testified he spoke with the Camachos concerning the hearing date, but that a miscommunication occurred because the Camachos' daughter who usually translated was not present. Howe's arguments blaming his paralegal and changes in office personnel are to no avail because he is responsible for ensuring his nonlawyer staff's conduct comports with his professional obligations as an attorney under Rule 5.3(b), N.D.R. Prof. Conduct.

[¶ 19] We conclude clear and convincing evidence establishes that Howe did not meet the diligence requirements for the Camachos' case and that he violated Rule 1.3, N.D.R. Prof. Conduct.

## C

[¶ 20] Disciplinary counsel alleged Howe failed to adequately communicate with his clients. Rule 1.4, N.D.R. Prof. Conduct, provides:

"(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's consent is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) make reasonable efforts to keep the client reasonably informed about the status of a matter;

(4) promptly comply with the client's reasonable requests for information; and

(5) consult with the client about any relevant information on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by these Rules or other law.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[¶ 21] Howe failed to communicate with the Camachos concerning key court dates and the fees and costs associated with representation. Howe offered two versions of how the missed hearing occurred. First, he said the Camachos missed their rescheduled merits hearing because he failed to notify them of the date due to a change in office personnel. Howe later argued that he tried to communicate the date, but confusion persisted because the Camachos' daughter was not there to translate. Reasonable efforts to ensure the client is informed of the status of the matter include assuring the Camachos understood their hearing was rescheduled despite their daughter not being available to translate. *Cf. Annotated Model Rules of Professional Conduct* R. 1.4 Annotation, at 60–61 (7th ed. 2011) ("[A] lawyer risks violating Rule 1.4 by communicating with a third party instead of directly with the client.") (citing *cf. Attorney Grievance Comm'n v. Lee*, 390 Md. 517, 890 A.2d 273 (2006) (lawyer who had difficulty communicating directly with imprisoned client, and who had previously communicated with client's mother, disciplined for failing to continue communication through mother)). Howe represented the Camachos pro bono, which may explain the lack of information given to the Camachos about Howe's time and effort on the matter; nevertheless, according to both Howe and the Camachos, the Camachos were never given statements of the costs and expenses incurred in the course of representation, despite paying Howe $4,050. This omission speaks to the greater lack of communication involved in Howe's representation under Rule 1.4, N.D.R. Prof. Conduct, rather than violating the fee rule, N.D.R. Prof. Conduct 1.5(a) and (b).

[¶ 22] Based on Howe's failure to communicate dates, deadlines and financial arrangements, clear and convincing evidence establishes Howe did not adequately communicate with his clients, in violation of Rule 1.4, N.D.R. Prof. Conduct.

## V

[¶ 23] Howe argues in his objection to the hearing panel's recommendations and in his briefing to this Court that his three-part strategy was disregarded, ignored or not understood. Howe's three-part strategy for the Camachos included petitioning

for cancellation of removal by showing exceptional and extremely unusual hardship, taking necessary steps to protect the status and assets of the Camacho family and keeping the Camachos in the United States for as long as possible.

[¶ 24] Although Rule 3.2, N.D.R. Prof. Conduct, was not included by the disciplinary counsel in its petition for discipline, Howe's arguments implicate Rule 3.2, providing: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." "The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay." N.D.R. Prof Conduct 3.2 cmt. 2. Howe's argument that he sought delay at any cost for his clients is legally untenable under Rule 3.2 because a competent and diligent immigration lawyer would not seek delay by purposely failing to timely file documents requested by the judge, and would not refrain from telling clients about hearing dates in the hopes trial would be postponed. A competent and diligent lawyer would not do these things because the judge is not required to show lenience for failure to follow requirements, and lawyers can never predict how a judge will react to such failures. Despite noting Howe's unpreparedness at the December 1, 2008 hearing, the immigration judge allowed thirty extra days to augment the file. Despite Howe failing to tell the Camachos of the rescheduled merits hearing, the immigration judge showed lenience and rescheduled the merits hearing rather than immediately issuing a removal order in their absence. Further, the immigration court showed lenience with Howe's inability or unwillingness to follow document submission requirements. The Camachos are still in the United States and in the appeal process for nothing but the grace of the immigration court judge, rather than due to Howe's alleged strategy.

[¶ 25] Howe's arguments on review fail under Rule 3.2. The numerous egregious risks Howe took during his representation of the Camachos are dispositive. Clear and convincing evidence establishes he violated Rules 1.1, 1.3 and 1.4, N.D.R. Prof. Conduct.

VI

[¶ 26] In determining the appropriate discipline for Howe, the hearing panel considered aggravating factors under Standard 9.22 of the North Dakota Standards for Imposing Lawyer Sanctions, including prior disciplinary offenses, a pattern of misconduct, vulnerability of the victims and substantial experience in the practice of law. The hearing panel recommended a six-month suspension under Standard 4.42(b) because Howe engaged in a pattern of neglect and caused injury or potential injury to a client. The hearing panel also recommended Howe pay $8,871.34 in costs and expenses of the proceedings, as outlined in the Affidavit of Costs and Expenses, and that Howe provide a clear and precise accounting to the Camachos of costs and payments made during their attorney-client relationship.

[¶ 27] We agree suspension is the appropriate sanction but, given Howe's conduct and history of discipline, conclude a six-month and one-day duration is appropriate, effective thirty days from this decision. Howe will need to show proof of rehabilitation under N.D.R. Lawyer Discipl. 4.5(A) before he may be reinstated to practice law. Howe is ordered to pay the costs of the disciplinary proceeding totaling $8,871.34 within thirty days of this decision. Howe must provide an accounting to the Camachos within thirty days of this decision.

## VII

[¶ 28] We conclude Howe violated N.D.R. Prof. Conduct 1.1, 1.3 and 1.4. We order Howe be suspended from the practice of law for six months and one day, effective thirty days from this opinion. We order that Howe pay $8,871.34 in costs and expenses of the proceedings within thirty days, payable to the Secretary of the Disciplinary Board, Judicial Wing, 1st Floor, 600 East Boulevard Avenue, Bismarck, ND 58505–0530. We order Howe to provide the Camachos with an accounting of the costs and expenses associated with Howe's representation within thirty days. Howe must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice. Reinstatement is governed by N.D.R. Lawyer Discipl. 4.5.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.